MORRIS E. CARSON AND BETTY F. CARSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carson v. Commissioner
Docket No. 39310-87
United States Tax Court
T.C. Memo 1990-508; 1990 Tax Ct. Memo LEXIS 561; 60 T.C.M. (CCH) 870; T.C.M. (RIA) 90508; September 24, 1990, Filed *561 Decision will be entered for the respondent. C. Richard Davis, for the petitioners. Deborah C. Stanley, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $ 2,562, $ 4,282, and $ 2,425 for taxable years 1984, 1985, and 1986, respectively. The sole issue for decision is whether petitioners' dog breeding activity was engaged in for profit, within the meaning of section 183(a). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are *563 incorporated herein by this reference. Petitioners Morris E. Carson and Betty F. Carson resided in Richmond, Virginia when they filed their petition in this case. Petitioners filed joint Federal income tax returns for taxable years 1984, 1985, and 1986 with the Internal Revenue Service Center in Memphis, Tennessee. During the years in issue, petitioner Morris E. Carson (Dr. Carson) was employed as a Spanish professor and Department Chairman by J. Sargeant Reynolds Community College. He earned wages during those years in the amounts of $ 38,108.14, $ 44,036.80, and $ 47,740.12, respectively. Petitioner Betty F. Carson is a former teacher. She reported W-2 wages for the taxable year 1984 in the amount of $ 317.90. [2] She did not receive W-2 wages during either taxable year 1985 or 1986. Petitioners purchased their first pomeranian *564 dog as a pet in 1974 and acquired a second pomeranian in 1976. Petitioners began showing pomeranians in the mid-1970's. They owned approximately seven pomeranians at that time and, by 1982, they owned approximately 11 such dogs. From 1977 until 1982, petitioners "finished" 10 pomeranians to champion as certified by the American Kennel Club (AKC). [3] Of these, five were bred by petitioners; the remaining five were purchased. From 1982 through 1988, petitioners finished 12 pomeranians to champion. All 12 were bred by petitioners. Of these 12 pomeranians, three were finished to champion during the taxable years in issue, four were finished to champion during 1982 and 1983, and five were finished to champion during 1987 and 1988. In addition, petitioners bred 24 pomeranian puppies which were sold to and finished to champion by third parties. All of these sales occurred during the years 1982 through 1988. *565 Dr. Carson has been selected as a special judge to judge pomeranians at pomeranian shows. In this capacity, Dr. Carson has had the responsibility of selecting the pomeranian to be designated "best of breed." Prior to 1982, Dr. Carson attended a course at J. Sargeant Reynolds Community College entitled "Small Animal Care and Management." This course was taught by Dr. Stephen F. Lickey of Lakeside Animal Hospital. The subject matter of the course included materials relating to the business aspects of raising pomeranians for profit. In addition, petitioners have consulted with individuals who are knowledgeable regarding the care, breeding, and showing of pomeranians, and they have also subscribed to magazines and purchased books on raising pomeranians. Petitioners maintain their pomeranians in an 18' by 24' area located in an addition of their home. Whelping mothers and puppies are maintained in a separate room of the petitioners' home. During the years in issue, petitioners owned between 12 and 14 pomeranians. Of this number, petitioners showed approximately five or six of these dogs, and the others were used for breeding purposes. These pomeranians are allowed to exercise *566 in petitioners' backyard and, during foul weather, on petitioners' sun porch. Petitioners also had two pet pomeranians that were formerly used for breeding purposes. [4] Their pet pomeranians are kept and fed in a bedroom of petitioners' home and allowed to exercise on the sun porch. Petitioners do not advertise in the local newspaper or in the telephone directory. They have, however, advertised in national trade magazines. Mrs. Carson tends to the care, feeding, and maintenance of the pomeranians. Dr. Carson dedicates on the average of two hours a day after work to the care, breeding, and development of the pomeranians. During whelping of a pomeranian, petitioners attend to the litter at all hours of the night. Pomeranian newborn puppies require feeding supplementation every two hours by the breeders for at least three days. During April and May of 1984, petitioners lost two valuable champions (Ch. Emcee's Golden Chip and Ch. Emcee's Chip of Diamond). *567 Both champions died as a result of injuries sustained while their teeth were being cleaned by a veterinarian. These two champions were not, however, intended for sale by petitioners. Rather, they were used by petitioners as studs for breeding urposes. As a result of the loss of these two dogs, petitioners retained show quality puppies for breeding purposes, that were otherwise intended for sale. In addition, during the years in issue, six other champion pomeranians proved to have no value in petitioners' breeding program. This was due to factors such as infertility, inability to produce viable litters, infections, and skin disorders. In Henrico County, Virginia, a permit and kennel license are required in order to keep four or more dogs in a subdivision such as the one where petitioners live. In addition, persons engaged in the sale of dogs are required to obtain a commercial kennel license. Petitioners failed to obtain the permit or either license during the years in issue. Petitioners began reporting their pomeranian breeding activity as a business for income tax purposes for the taxable year 1982. Petitioners reported a loss from their dog breeding activity in each taxable *568 year from 1982 through 1986. During the three years in issue, petitioners reported losses aggregated $ 31,389.69. These losses were computed on schedule C of their Federal income tax returns as follows: 1984
1985
1986
Gross Income
$ 6,050.00    $ 3,350.00   $ 4,450.00   Total Deductions
(15,425.29)
(17,840.23)
(11,974.17)
Net Loss
$ (9,375.29) $ (14,490.23)
$ (7,524.17) The income realized by petitioners from their pomeranian breeding and showing activities included sales proceeds and occasional stud fees. [5] *569 Petitioners' expenses included dog show registration fees, handlers' fees, dog food, veterinary fees and supplies, automobile expenses, utilities and telephone charges, advertising costs, and depreciation. In 1984 and 1985, petitioners incurred and deducted total legal expenses of $ 7,486 defending a lawsuit brought against them by a dissatisfied novice breeder who had purchased several pomeranians from petitioners. [6]
Petitioners reported a profit of $ 3,210 from their dog breeding activity for taxable year 1987. On schedule C of their 1987 Federal income tax return, petitioners reported gross receipts in the amount of $ 11,246 and claimed total deductions in the amount of $ 8,036. OPINION Section 183(a) provides that a taxpayer cannot claim a deduction for an activity which is "not engaged in for profit," except as provided for under section 183(b). An activity not engaged in for profit is "any activity other than one with respect to which deductions are allowable for the taxable year *570 under section 162 or under paragraph (1) or (2) of section 212." Sec. 183(c). Section 162 allows a taxpayer to claim a deduction for all the ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212 generally allows a taxpayer to claim a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year "for the production or collection of income," and "for the management, conservation, or maintenance of property held for the production of income." For a deduction to be allowable under either section 162 or 212, the taxpayer must show that the activity in which the expenses were incurred was engaged in with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, a taxpayer's profit objective must be bona fide. *571 Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); Dreicer v. Commissioner, supra at 645. This is a factual issue which is to be resolved after considering all the relevant facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Finoli v. Commissioner, 86 T.C. 697, 722 (1986). In making this determination, greater weight is given to objective facts than a taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Petitioners bear the burden of establishing the requisite profit objective. Beck v. Commissioner, 85 T.C. 557, 569-570 (1985); Rule 142(a). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors for determining *572 whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). We begin by examining the manner in which petitioners carried on their dog breeding activity. The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective. *573 Sec. 1.183-2(b)(1), Income Tax Regs. We do not believe that petitioners operated their dog breeding activity in a businesslike manner. Petitioners claim that they maintained detailed records with respect to the dogs in their breeding program. Dr. Carson testified, in general, as to prices that he is able to obtain for show and pet quality pomeranian puppies. However, he failed to testify or provide documentation as to the number of pomeranians he bred and sold, and the prices he obtained during each of the years in issue. Dr. Carson further testified that he maintains individual folders in which he records income and expenses on each pomeranian. However, petitioners failed to introduce into evidence any of these purported records. The revenue agent who examined petitioners' records testified that such records were not maintained in individual folders for each dog, and that petitioners' records consisted mainly of cancelled personal checks and receipts. While cancelled checks may be sufficient for substantiation purposes, they do not constitute businesslike recordkeeping. *574 See Steele v. Commissioner, T.C. Memo. 1983-63. On brief, petitioners further argue that they operated their activity in a businesslike manner, because they advertized in various publications. Petitioners introduced into evidence advertisements they took out in Dog World, Pomeranian Review, and the AKC Gazette. We do not find this evidence to be a significant indicia of businesslike operations during the years in issue. Two of the advertisements were made after the years in issue, and the other advertisement was made in November of 1986. In addition, the advertisement in 1986 which was made in Pomeranian Review, appears to promote petitioners' show success rather than their breeding activity. See Ballich v. Commissioner, T.C. Memo. 1978-497. Petitioners claim that they projected income and expenses in 1982, the year they first reported their activity as a business for Federal income tax purposes. A study done prior to beginning an activity may indicate that the activity was engaged in the with the objective of making a profit. See Steele v. Commissioner, supra. *575 Petitioners purchased their first pomeranian as a pet, and at that time they did not have any intention of breeding their dog. Dr. Carson testified that prior to starting his business, he made a mental projection of the income he expected to receive from the activity but on cross-examination, was unable to supply any details. The failure to develop specific plans or establish specific goals lends further support to respondent's contention that their dog breeding activity was not engaged in with the requisite profit objective. See Burger v. Commissioner, 809 F.2d 355, 359 n.6 (7th Cir. 1987), affg. a Memorandum Opinion of this Court. The expertise of petitioners or their advisors is another factor to be considered. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioners have developed expertise in showing and breeding pomeranians. They have consulted individuals knowledgeable in breeding and showing pomeranians, have subscribed to magazines, and have purchased books on breeding and showing dogs. Prior to 1982, Dr. Carson attended a course at J. Sargeant Reynolds Community College which included information on raising pomeranians. Petitioners *576 introduced into evidence the affidavit of Marlene Scott Halsey which states that petitioners "have discussed their business questions with me often." However, petitioners have failed to develop on the record the extent of training and advice they have received as to the business aspects of breeding dogs for profit. We therefore place little weight on this factor. The amount of time and effort expended by petitioners in carrying on the activity is another factor to be considered. Sec. 1.183-2(b)(3), Income Tax Regs. Dr. Carson devotes approximately two hours after work attending to the pomeranians, and Mrs. Carson attends to the dogs during the day. Mrs. Carson's daily routine includes grooming and bathing the pomeranians, cleaning cages, administering medications, preparing special meals, and feeding the dogs twice each day. Caring for 12 to 14 dogs on a daily basis would indeed require a certain commitment of time on the part of the owners. Nevertheless, we find this factor to be outweighed by the other factors to be considered in deciding whether petitioners' *577 activity was engaged in with a profit objective. Another factor is petitioners' expectation that the assets used in their breeding activity would increase in value. Sec. 1.183-2(b)(4), Income Tax Regs. Dr. Carson testified, in general, that the prices he has been receiving from pomeranian show and pet quality puppies has increased since when he first began breeding pomeranians. In addition, petitioners have submitted two affidavits which value the two champion dogs that they lost in 1984. Except for the evidence regarding these two dogs, petitioners have failed to offer into evidence any detailed records, such as an inventory of the dogs in their breeding program and their respective values during the years in issue. Cf. Burleson v. Commissioner, T.C. Memo. 1983-570. Itis, therefore, difficult for us to evaluate whether petitioners had an expectation that the assets in their activity would increase in value, and as such we place little weight on this factor. History of losses with respect to the activity is another factor to be considered. Sec. 1.183-2(b)(6), Income Tax Regs. The regulations provide that *578 a series of losses beyond the start-up stage of an activity may indicate that the activity was not engaged in for profit unless such losses can be blamed on unforeseen or fortuitous circumstances beyond the taxpayer's control. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioners reported losses from their breeding activity in every taxable year from 1982 through 1986. During the years in issue, petitioners' losses aggregated $ 31,389.69. Petitioners contend that these losses were attributable to unforeseen or fortuitous circumstances that were beyond their control. First, petitioners bring to our attention the fact that they incurred a legal expense in 1984 and 1985 as a result of a lawsuit filed against them by a person who purchased pomeranians from them. However, even if petitioners had not incurred these legal expenses during 1984 and 1985, their reported expenses from their dog breeding activity would have still substantially exceeded their reported income from the activity. Second, petitioners also bring to our attention the fact that they lost two valuable champions and that six other pomeranians were ineffective in their breeding program. As a *579 result, petitioners argue that they lost expected sales revenue. There is no evidence in the record, however, as to the amount of sales revenue petitioners lost as a result of these circumstances. We therefore place little weight on petitioners' argument that their losses during the years in issue were attributable to unforeseen or fortuitous circumstances. The amount of occasional profits, if any, that are earned is also a relevant factor in determining profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioners reported a profit of $ 3,210.00 on schedule C of their 1987 Federal income tax return. The 1987 return was prepared after the examination of the years in issue and, as pointed out by respondent on brief, there are significant differences between the expenses petitioners claimed on their Schedules C during the years in issue, and on their 1987 Schedule C. For example, petitioners deducted utilities expenditures of approximately $ 1,000.00 for 1984 and approximately $ 1,500.00 for each of the years 1985 and 1986, but no utilities were deducted *580 in 1987. Similarly, in 1985 and 1986 petitioners deducted automobile expenses of $ 2,101.19 and $ 3,105.00, respectively, but no automobile expenses were deducted in 1987. Dr. Carson testified that his net profit in 1987 was partly attributable to reduced handlers' expenses, fewer entry and registration fees, and lower advertising costs. However, petitioners' reported greater expenses for handlers' fees, entry fees, and advertising costs in 1987 than they did in 1986. Advertising costs and entry fees were lower in 1987 than 1985, but handlers' expenses were not. We place little weight on the fact that petitioners reported a profit from their dog breeding activity for taxable year 1987. Another factor to be considered is petitioners' financial status. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from outside sources, showing the lack of need to make a profit from the activity, may indicate a lack of profit objective. Sec. 1.182-2(b)(8), Income Tax Regs. During the years in issue, Dr. Carson earned on average approximately $ 43,000 per year. Petitioners used the losses from their dog breeding activity to offset *581 this income. Although this factor is not determinative in and of itself, it lends additional support to respondent's argument that petitioners' dog breeding activity was not entered into for profit. Steele v. Commissioner, T.C. Memo. 1983-63. Petitioners were obviously fond of their dogs and derived personal satisfaction and pleasure from them. Petitioners also showed their pomeranians which is an activity that has recreational aspects. See Steele v. Commissioner, supra; Ballich v. Commissioner, T.C. Memo. 1978-497. The presence of recreational elements in the activity may be an indication that the activity was not engaged in with a profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. This is another factor which weighs against petitioners. In determining whether petitioners were engaged in a business for profit, an additional relevant factor is their compliance with the licensing and zoning laws of Henrico County, Virginia, where petitioners resided and carried on their dog breeding activity. See Ballich v. Commissioner, supra. Petitioners did not obtain the permit *582 and licenses during the years in issue which would have been required for the business they contend they were operating. We believe that a person who enters in to an activity with a bona fide profit objective would, at a minimum, obtain the necessary permits and licenses in order to carry on that activity. Petitioners' failure to obtain the necessary permit and licenses is further evidence that their dog breeding activity was not engaged in with the requisite profit objective. We hold that petitioners have failed to meet their burden of proving that their dog breeding activity was engaged in with the requisite profit objective during the years in issue. Accordingly, petitioners' dog breeding losses for the taxable years in issue are limited to those allowable under section 183(b). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The stipulation of facts indicates that Betty F. Carson received no W-2 wages in 1984. The parties did not explain this inconsistency, and it is not relevant to this opinion.↩
3. At a dog show, a dog earns various points depending upon its finish. These points are accumulated over the dog's career, and once the dog has accumulated 15 points it is certified as a champion by the AKC.↩
4. At the time of trial, petitioners had four such pets.↩
5. In 1985, petitioners sold seven puppies and received one stud fee for total gross receipts of $ 3,350. Similar figures, however, for 1984 and 1986 were not offered into evidence.↩
6. On schedule C of their 1985 Federal income tax return, petitioners claimed a deduction in the amount of $ 3,845.50 for legal and professional services. Although the copy of petitioners' schedule C of their 1984 Federal income tax return is illegible, we conclude, based upon the stipulation of facts, that petitioners claimed a deduction in the amount of $ 3,639.00 for legal and professional expenses, for taxable year 1984.↩