SAMUEL KEANINI AND MOANIKIALA JELLINGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5663-87.          Filed January 30, 1990.

*Linnel T. Nishioka,* for the petitioners.
*Jonathan J. Ono,* for the respondent.

NIMS, *Chief Judge:* Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $3,964

---

and $3,875.55 for 1982 and 1983, respectively. (All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.)

The issues for decision are whether petitioners (1) engaged in dog breeding and grooming for profit within the meaning of section 183(a); and (2) are entitled to deduct certain expenses incurred in their dog breeding and grooming operation.

### FINDINGS OF FACT

At the time of filing their petition, petitioners resided in Honolulu, Hawaii. Petitioners were married and filed joint Federal income tax returns for 1982 and 1983.

During the late 1970's, petitioners became interested in starting a dog breeding and grooming business. In 1979, petitioner Moanikeala Jellinger (Jellinger) worked on a part-time basis at a dog grooming shop and attended a 3-month seminar at an entrepreneur training school learning how to start and manage a new business. In 1980, petitioners purchased two poodles and began breeding the poodles on a part-time basis at their personal residence.

In 1982, petitioners built a kennel at their personal residence (the kennel) and started breeding poodles, grooming dogs, and sponsoring dogs in quarantine on a full-time basis.

In January 1982, petitioners began breeding, selling, and showing black miniature poodles (the breeding operation) under the name of "Pua's Poodles" at the kennel.

Petitioners acquired quality breeding stock from the mainland for the breeding operation at a reduced cost by entering into "co-ownership agreements" with mainland dog owners. Under a co-ownership agreement, petitioners and a mainland dog owner would agree to share the cost of purchasing and breeding a poodle equally. Although the mainland dog owner would actually raise and breed the poodle, petitioners were entitled to half the poodle's litters.

Petitioners sold every poodle from the breeding operation under a written contract which included two provisions. The first provision (the puppy-back provision) required that the poodle purchaser give petitioners, at no cost, a puppy from

the poodle's first litter. The second provision required that the poodle purchaser retain petitioners to groom the poodle.

Petitioners showed their poodles at dog shows on the mainland and kept records of their breeding stock as required by the American Kennel Club. Petitioners hired professional dog handlers to show their poodles at dog shows on the mainland that they did not attend. Nine of petitioners' poodles have won national championship titles, and petitioners have established a national reputation as breeders of quality miniature poodles. Petitioners substantially increased the value of their breeding stock by winning national championship titles and estimate that their breeding stock is worth between $20,000 to $25,000.

From January 1982 to September 1983, petitioners groomed dogs at the kennel and at the homes of other dog owners. In September 1983, petitioners opened a dog-grooming shop (the grooming shop) called the "Hair Apparent" to groom dogs and sell dog care products. Petitioners could groom up to 12 dogs a day at the grooming shop. Petitioners hired part-time employees to assist in grooming dogs and purchased supplies for the grooming shop from wholesalers on the mainland.

Since January 1982, petitioners have been listed by the Hawaii Quarantine Station (quarantine station) as individuals who are willing to sponsor dogs in quarantine. Animals brought into the State of Hawaii must be placed under quarantine for 120 days in a kennel at the quarantine station. Petitioners, as sponsors, agreed to feed and groom dogs held in quarantine under written contracts entered into with dog owners. By sponsoring dogs in quarantine, petitioners came in contact with dog owners interested in purchasing grooming services from the grooming shop and poodles from the breeding operation.

Petitioners operate what is referred to in the dog business as a fully "integrated" operation because breeding and grooming are carried on within a single business. (Hereinafter the fully integrated operation will be referred to as "the dog operation.")

Ms. Gold, a dog industry expert, testified that breeding and grooming is commonly carried on within a single integrated business because the same customer that pur-

chases a puppy also needs grooming services and dog care products.

Petitioners advertised the breeding operation and the grooming shop in the yellow pages, local newspapers, and national dog publications.

Before starting the dog operation, Jellinger had worked as a geologist for the State of Hawaii on a full-time basis. From 1982 to 1988, Jellinger has worked exclusively in the dog operation averaging between 80 to 100 hours a week. From 1982 to 1988, petitioner Samuel Keanini (Keanini) has worked full-time for the Honolulu Police Department and 20-30 hours a week in the dog operation.

Petitioners are the only dog groomers in the State of Hawaii certified by the Pet Groomers Association of America (PGAA). To be certified by the PGAA, petitioners had to pass a written, oral, and hands-on exam. Petitioners regularly attend trade shows, retail marketing shows, and grooming seminars and subscribe to a number of dog publications. Jellinger is an active member of the American Kennel Club, the Obedience Training Club of Hawaii, and the Poodle Club of Hawaii. During the summer of 1983, Jellinger attended a seminar on the mainland to learn how to more efficiently manage the dog operation.

From January 1982 to September 1983, Jellinger paid the expenses of the dog operation with checks drawn on her personal checking account. In September 1983, a separate checking account was opened to pay expenses of the grooming shop. Petitioners prepared monthly and quarterly income and expense statements for the dog operation. Jellinger kept a daily log in which she recorded the local mileage and expenses incurred in using her automobile in the dog operation.

Petitioners reported the following amounts in connection with the dog operation on Schedule C of their joint Federal income tax returns:

| Year | Income | Deductions | Profit/(Loss) |
|------|--------|------------|---------------|
| 1982 | $1,304 | $18,323 | (17,019) |
| 1983 | 4,875 | 21,741 | (16,866) |
| 1984 | 12,528 | 23,458 | (10,930) |
| 1985 | 20,100 | 28,154 | (8,054) |
| 1986 | 19,273 | 23,628 | (4,355) |
| 1987 | 26,114 | 24,913 | 1,201 |

Included in the deductions were the following amounts:

| Year | Car and truck | Utilities and telephone | Education and seminars |
|------|---------------|-------------------------|------------------------|
| 1982 | $6,266 | $672 | - - - |
| 1983 | 5,938 | 947 | $500 |

Respondent determined that petitioners were not entitled to deduct (1) the losses incurred by the dog operation in 1982 and 1983 because petitioners were not engaged in the dog operation for profit within the meaning of section 183(a); and (2) certain miscellaneous expenses incurred in the dog operation because these expenses were not adequately substantiated.

OPINION

As a general rule, individuals are not allowed to deduct losses attributable to an activity not engaged in for profit. Sec. 183(a). Section 183(c) defines an "activity not engaged in for profit" as an "activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." A taxpayer must engage in an activity with the objective of making a profit in order to fully deduct expenses under either section 162 or section 212. *Golanty v. Commissioner,* 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

Respondent contends that breeding operation and grooming shop are separate activities for purposes of section 183(a) and that the breeding operation is not an activity engaged in for profit. We do not agree.

In determining whether a taxpayer engages in two or more separate activities for purposes of section 183, section 1.183-1(d)(1), Income Tax Regs. provides that:

all the facts and circumstances of the case must be taken into account. Generally, the most significant facts and circumstances in making this determination are the degree of organizational and economic interrelationship of various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings. Generally, the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities. The taxpayer's characterization

will not be accepted, however, when it appears that his characterization is artificial and cannot be reasonably supported under the facts and circumstances of the case. * * *

We find that petitioners' characterization of the dog operation as a single activity for purposes of section 183 to be fully supported by the facts of this case. A close organizational and economic relationship exists between the breeding operation and the grooming shop. Dog breeding and grooming are similar undertakings and are commonly carried on within a single "integrated" business. Petitioners initially carried on both breeding and grooming at the kennel. The goodwill derived from winning national championship titles benefits both the breeding operation and the grooming shop. By retaining, under contract, the right to groom every poodle sold, every customer of the breeding operation becomes a customer of the grooming shop. The breeding operation and grooming shop were carried on as a single integrated business and shared common customers, goodwill, and physical facilities. Thus, we find that a close organizational and economic relationship exists between the breeding operation and grooming shop. See *Burleson v. Commissioner,* T.C. Memo. 1983-570. Accordingly, we determine that for purposes of section 183 the dog operation was a single activity.

We next consider whether petitioners engaged in the dog operation with the objective of making a profit. Petitioners do not need to establish that their expectation of profit was reasonable provided they had an "actual and honest objective of making a profit." *Dreicer v. Commissioner,* 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Whether petitioners engaged in the dog operation with the requisite objective of making a profit is one of fact to be resolved on the basis of all the surrounding facts and circumstances. *Lemmen v. Commissioner,* 77 T.C. 1326, 1340 (1981). In making this determination, more weight is accorded to objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs. The burden of proving the requisite objective is on petitioners. *Sabelis v. Commissioner,* 37 T.C. 1058, 1062 (1962); Rule 142(a).

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors, which is in large part a synthesis of prior case law, to be considered in determining whether an activity is engaged in for profit. *Benz v. Commissioner*, 63 T.C. 375, 382-383 (1974). These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling. Rather the facts and circumstances of the case taken as whole are determinative. *Abramson v. Commissioner*, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.

The facts and circumstances of the present case show that petitioners engaged in the dog operation for profit. From 1982 to 1988, petitioners were breeding championship poodles, grooming dogs, and sponsoring dogs in quarantine. Jellinger left her profession as a geologist, and from 1982 to 1988 she worked 80-100 hours a week and Keanini worked 20-30 hours a week in the dog operation. Initially, petitioners were able to carry on the dog operation at the kennel using only their own labor. As the dog operation expanded, petitioners opened a separate grooming shop and hired part-time groomers and professional dog handlers. Although the dog operation suffered losses during its startup years, the losses decreased steadily each year and in 1987 a profit was realized. The profit earned after years of hard work convinces us that petitioners were engaged in the dog operation for profit.

As their experience grew, petitioners implemented business practices designed to make the dog operation more profitable. Petitioners reduced the cost of purchasing supplies for the grooming shop by purchasing these supplies directly from wholesalers on the mainland. Petitioners reduced the cost of acquiring breeding stock from the

mainland by entering into co-ownership agreements. Petitioners increased grooming revenues by retaining, under contract, the right to groom every poodle they sold. Petitioners obtained quality breeding stock, at no cost, by selling every poodle under a contract with a puppy-back provision.

Petitioners used a number of marketing techniques to generate revenue and goodwill for the dog operation. Petitioners advertised the grooming shop and breeding operation in the yellow pages, local newspapers, and national dog journals. Petitioners listed their names at the quarantine station as sponsors. As quarantine sponsors, petitioners came in contact with dog owners interested in purchasing grooming services at the grooming shop and poodles from the breeding operation. By hiring professional dog handlers to show their poodles and winning national championship titles, petitioners established a national reputation as quality breeders, thus increasing the value of their breeding stock and creating goodwill for their grooming shop.

Petitioners possessed the experience needed to successfully carry on the dog operation. Jellinger had worked at a dog grooming shop prior to starting the dog operation. Petitioners regularly attend seminars and clinics on dog marketing, breeding, and grooming and are the only nationally certified dog groomers in the State of Hawaii. Jellinger is an active member of three dog clubs and subscribes to numerous dog periodicals. Jellinger spent the summer of 1983 attending a seminar on the mainland learning how to manage the dog operation more efficiently.

Considering all the facts and circumstances, we find that petitioners engaged in the dog operation with the objective of making a profit.

Respondent next contends that petitioners are not allowed to deduct expenses incurred in using their personal automobile and home telephone in the dog operation because the deductions were not adequately substantiated. Petitioners bear the burden of proving that they are entitled to deduct their automobile and telephone expenses. Rule 142(a).

Petitioners maintained a meticulous daily log showing the number of miles and the expenses incurred in driving their automobile for local business purposes. Based on the daily log, we find that petitioners have adequately substantiated the automobile expenses claimed for 1982 and 1983.

Because petitioners did not submit any documentation showing that their home telephone was used for business purposes, we determine that petitioners are not entitled to deduct any telephone expenses for 1982 and 1983.

Respondent also challenges the deduction that petitioners claimed for a seminar fee. Because petitioners have failed to submit a receipt or any other document to substantiate the deduction claimed for the challenged seminar fee, we determine that petitioners are not entitled to deduct the fee at issue.

To reflect the foregoing,

*Decision will be entered under Rule 155.*