LARRY V. AND CAROLYN B. NICHOLSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nicholson v. Commissioner
Docket No. 16373-88
United States Tax Court
T.C. Memo 1991-135; 1991 Tax Ct. Memo LEXIS 154; 61 T.C.M. (CCH) 2242; T.C.M. (RIA) 91135; March 26, 1991, Filed *154 Decision will be entered under Rule 155. Larry V. Nicholson and Carolyn B. Nicholson, pro se. Ross A. Rowley, for the respondent. RUWE, Judge. RUWE
MEMORANDUM OPINION Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1984
$ 5,422
$ 271
50 percent of the
interest due on
$ 4,299
1985
4,198
210
50 percent of the
interest due on
$ 3,470
Addition to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1986
$ 3,483
$ 174
50 percent of the
interest due on
$ 3,361
The issues for decision are: (1) Whether petitioners are entitled to dependency exemptions for petitioner Larry V. Nicholson's children, Larry, Jr., *155 and Kristie, for the taxable years 1984 and 1985, and whether petitioners are entitled to a dependency exemption for Kristie for the taxable year 1986; (2) whether losses claimed by petitioners with respect to a rental cottage are limited by section 280A; (3) whether petitioners engaged in the activity of crabbing and fishing for profit; (4) whether petitioners are entitled to investment tax credits for the taxable years 1984 and 1985; (5) whether petitioners are subject to the investment tax credit recapture for the early disposition of property with respect to which an investment tax credit was claimed for the taxable year 1983; (6) whether petitioner Larry V. Nicholson received $ 199 of unreported income from the Moon Tillet Fish Company, Inc., during the taxable year 1984; (7) whether petitioners may claim medical and dental expense deductions and interest expense deductions for the taxable years 1984, 1985, and 1986 in excess of those allowed by respondent; and (8) whether petitioners are liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules or regulations. [2]
*156 Some of the facts have been stipulated and are so found. The first stipulation of facts, the first supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners resided in Engelhard, North Carolina, at the time they filed their petition in this case. Petitioners jointly filed their Federal income tax returns for the taxable years 1981 through 1986. For purposes of convenience, we are combining our findings of fact and opinion for each issue. Issue 1. The Dependency Exemptions
Kristie Nicholson and Larry Nicholson, Jr. are the children of Mr. Nicholson from a prior marriage. For the taxable years 1984 and 1985, petitioners claimed dependency exemptions for Larry, Jr., and Kristie. For the taxable year 1986, petitioners claimed a dependency exemption for Kristie. In 1984, Kristie was 10 years old and Larry, Jr., was 18 years old. During each of the years in issue, Kristie was in the custody of Mr. Nicholson's ex-wife for more than one-half of the year. For the taxable year 1984, Larry, Jr., resided with Mr. Nicholson from January 1, 1984, to February 15, 1984. From February 15, 1984, until sometime in June 1984, Larry, *157 Jr., resided with Mr. Nicholson's ex-wife. In June 1984, Larry, Jr., graduated from high school and enlisted in the United States Marine Corps. After being discharged from the marine corps in mid-1984, Larry, Jr., resumed residence with Mr. Nicholson's ex-wife. In June 1984, Larry, Jr., graduated from high school and enlisted in the United States Marine Corps. After being discharged from the marine corps in mid-1984, Larry, Jr., resumed residence with Mr. Nicholson's ex-wife. In September 1984, Larry, Jr., left his mother's residence and resided separately from both his parents. [3]
*158 By order of the Superior Court, Martin County, North Carolina, entered October 23, 1981, Mr. Nicholson was required to pay his ex-wife $ 50 per week for the support of Kristie and Larry, Jr. During 1984, Mr. Nicholson paid a total of $ 1,575 in child support payments pursuant to this order. On October 23, 1984, said order was superseded by a new order which required Mr. Nicholson to pay $ 40 per week to his ex-wife for the support of Kristie. During 1984, Mr. Nicholson paid a total of $ 360 pursuant to the October 23, 1984, order. Section 151(a), as in effect for the taxable year 1984, allows a taxpayer to deduct an exemption for dependents as provided for by section 151(e). Section 151(e) provides an exemption for each "dependent" as defined in section 152. In order to qualify as a "dependent" under section 152(a), petitioners must prove that the individuals claimed as dependents satisfy both a relation test and a support test. Mr. Nicholson's children clearly satisfy the relation test. [4] In order to satisfy the support test applicable to the 1984 year, a taxpayer must demonstrate that he or she provided over one-half of the dependent's support during the year in which the *159 individual is claimed as a dependent. Section 152(e) provides special rules for determining whether the support test is satisfied when the parents of a child claimed as a dependent are divorced. Under section 152(e)(1), if the divorced parents provide over half of the child's support and the child is in the custody of one or both parents for more than one-half of the year, the child is treated as receiving over half of his or her support from the parent who has custody of the child for a greater portion of the year. However, the parent having custody of the child for the lesser portion of the year, the noncustodial parent, may claim the dependency deduction if: (1) The divorce decree or written agreement between the parents provides that the noncustodial parent is entitled to the dependency deduction under section 151 and the noncustodial parent provides at least $ 600 for the support of the child; or (2) the parent not having custody provides at least $ 1,200 or more in support, and the parent having custody for the greater portion of the year does not clearly establish that he or she provided more for the support of the child during the calendar year in which the dependency deduction *160 is claimed. Sec. 152(e)(2). Petitioners bear the burden of proving that they are entitled to the claimed dependency exemption deductions. Rule 142(a). Petitioners did not introduce a divorce decree or other agreement between Mr. Nicholson and his ex-wife into evidence. Thus, in order to satisfy the support test, petitioners must show that they provided at least $ 1,200 of support during the calendar year for both Larry, Jr., and Kristie. Petitioners offered no evidence that Mr. Nicholson's payments, pursuant to the 1981 court order, were to be allocated disproportionately to one child. We, therefore, find that Mr. Nicholson paid $ 787.50 for the support of Larry, Jr., in 1984 and $ 1,147.50 for the support of Kristie in 1984. [5] Accordingly, the support test is not satisfied and petitioners may not claim the dependency exemption deduction for either child in 1984.
*161 Petitioners failed to prove that they had custody of Larry, Jr., during 1985. They also failed to prove that they had custody of Kristie in 1985 and 1986 for a greater portion of either year than Mr. Nicholson's ex-wife. For the years 1985 and 1986, in order for a divorced parent who has custody for a lesser portion of the year to claim the dependency exemption deduction, the parent must attach to his tax return a written declaration signed by the other parent stating that the other parent will not claim the child as a dependent. Sec. 152(e)(2). No such statement was attached to petitioners' tax returns for the years 1985 or 1986. Therefore, petitioners may not claim Larry, Jr., or Kristie as dependents for the taxable year 1985, and petitioners may not claim Kristie as a dependent for the taxable year 1986. Issue 2. The Beach Cottage
In October 1980, petitioners purchased a beach cottage in Salvo, North Carolina. They purchased the cottage for use as a vacation residence. The cottage was located less than two hours by car from petitioners' principal residence in Engelhard, North Carolina. The cottage was located at a family-oriented beach which attracted families *162 with children. During the taxable years 1984, 1985, and 1986, petitioners listed their cottage for rental with the Cape Escape Realty agency. During each of these years, petitioners' beach cottage was made available for rental only during the period from the Sunday of the first full or partial week in July through the Sunday of the week following Labor Day. The cottage was rented for a total of 25 days in 1984, 42 days in 1985, and 35 days in 1986. Gross rents from these rentals totaled $ 1,485, $ 2,370, and $ 1,975 for the taxable years 1984, 1985, and 1986, respectively. On their 1984, 1985, and 1986 Federal income tax returns, petitioners reported losses from the rental of the cottage in the amounts of $ 8,592.00, $ 4,790.00, and $ 6,188.00, respectively. On their 1984 return, petitioners claimed an interest expense deduction with respect to their cottage in the amount of $ 4,707.00. Petitioners' actual cottage-related interest payments for 1984 totalled $ 2,963.38. Respondent disallowed certain cottage-related expenses pursuant to section 280A. Section 280A(a) disallows certain deductions with respect to a dwelling unit which is used by the taxpayer as a residence. [6] *163 Section 280A(d) provides that a dwelling unit is used as a residence if the taxpayer uses the dwelling unit for personal purposes for a number of days which exceeds the greater of: (1) 14 days, or (2) 10 percent of the number of days during such year for which such unit is rented at a fair rental. Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a). *164 Petitioners have failed to prove that the cottage was not used by them as a residence for more than 14 days or 10 percent of the number of days the cottage was rented during the years in issue. The cottage was originally purchased as a vacation residence, was less than a 2-hour drive from petitioners' other home, was only rented for a few weeks each year, and was only offered for rent by petitioners for 2 months out of each year. Petitioners introduced no records or other evidence showing their personal use or occupancy. Petitioners acknowledge that they visited the cottage, but they claim that their visits were for the purpose of doing maintenance work. We found petitioners' testimony about their occupancy of the cottage and its limited rental availability to be vague and unconvincing. Accordingly, we find for respondent on this issue. Issue 3. The Crabbing and Fishing Activity
In 1981, petitioners purchased a Sea Ox sportsman boat and began using the boat in the activity of crabbing and fishing. Other assets used in the crabbing and fishing activity include a trailer for the boat, an outboard motor, a truck, fishing nets, and crab pots. On Schedule C of their Federal *165 income tax returns, petitioners reported net losses in the amounts of $ 12,000, $ 1,520, $ 2,586, $ 7,948, $ 8,585, and $ 5,166 for the taxable years 1981 through 1986, respectively. Section 183(a) provides that a taxpayer cannot claim a deduction for an activity which is "not engaged in for profit," except as provided for under section 183(b). An activity not engaged in for profit is any activity for which deductions would not be allowed under section 162, or under paragraphs (1) or (2) of section 212. Sec. 183(c). Section 162 allows a taxpayer to claim a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business. Section 212 generally allows a taxpayer to claim a deduction for all the ordinary and necessary expenses paid or incurred "for the production or collection of income," and "for the management, conservation, or maintenance of property held for the production of income." For a deduction to be allowable under either section 162 or 212, the taxpayer must show that the activity in which the expenses were incurred was engaged in with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), *166 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is unnecessary, a taxpayer's profit objective must be bona fide. Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); Dreicer v. Commissioner, supra at 645. This is a factual issue which is to be resolved after considering all the relevant facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Finoli v. Commissioner, 86 T.C. 697, 722 (1986). In making this determination, more weight is given to objective facts than a taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Petitioners bear the burden of establishing the requisite profit objective. Beck v. Commissioner, 85 T.C. 557, 569-570 (1985); Rule 142(a). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive *167 list of nine objective factors for determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; [7] (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). *168 Petitioners did not carry on their crabbing and fishing activity in a businesslike manner. They did not keep complete and accurate records of the activity's transactions. No records of cash sales were maintained. Petitioners insured their boat under their homeowner's policy as opposed to a policy for a commercial fishing boat, and the policy only covered use of the boat on inland lakes and rivers rather than the coastal waters where most of petitioners' fishing activity occurred. Petitioners lacked expertise in commercial crabbing and fishing. Prior to 1980, Mr. Nicholson was a farmer, logger, and timber buyer. Petitioners presented no evidence to indicate that they conducted any type of study to determine whether the crabbing and fishing activity would be profitable. Mr. Nicholson spoke to several commercial fishermen before starting the activity in order to learn how to set up his crab pots, and these fishermen advised him not to enter into the activity as it was not profitable. Mr. Nicholson engaged in the crabbing and fishing activity on a sporadic, part-time basis. The crabbing season began in mid-April and lasted until October. Mr. Nicholson's fishing and crabbing *169 trips would typically begin early in the morning and end in the afternoon. Mr. Nicholson made only eight sales of crab and/or fish in 1985. Five of these sales were in May and two were in June. Mr. Nicholson testified that on about two-thirds of his crabbing and fishing trips, he caught enough to sell. The fact that he made 8 sales in 1985 indicates that he went on approximately 12 fishing trips in 1985. Petitioners reported gross receipts of $ 1,993.00 from crabbing and fishing in 1985 on Schedule C of their 1985 Federal income tax return. The average gross receipt from each of these sales was $ 249.13. On Schedules C of their 1984 and 1986 Federal income tax returns, petitioners reported gross receipts of $ 1,200 and $ 2,294 from crabbing and fishing. We do not know the number of fishing and crabbing trips Mr. Nicholson made in 1984 and 1986, however, the relatively small amount of gross receipts indicates that, as in 1985, Mr. Nicholson chose to fish and crab on relatively few days each season, and this indicates a lack of profit objective. For the taxable years 1981 through 1986, petitioners reported net losses from the crabbing and fishing activity. Disregarding depreciation *170 deductions, the information on petitioners' returns indicates an average negative cash flow of $ 2,743.33 for the years at issue. Mr. Nicholson explained that the losses in the earlier years were due to an illness that prevented him from working. As to the latter years, Mr. Nicholson testified that they were neither good nor bad years for crabbing and fishing. A history of unexplained losses and the absence of occasional profits indicates a lack of profit objective. Mr. Nicholson enjoyed fishing and has fished for pleasure all of his life. We hold that petitioners fail to meet their burden of proving that the crabbing and fishing activity was engaged in with the requisite profit objective. Accordingly, losses from this activity are limited to those allowable under section 183(b). Issue 4. The Investment Tax Credit
Petitioners claimed investment tax credits in the amounts of $ 359 and $ 80 for the taxable years 1984 and 1985, respectively. These claimed credits were based on the purchase and placement into service of a truck in 1984 and crab pots in 1985. The truck and crab pots were used in connection with petitioners' crabbing and fishing activity. Respondent disallowed *171 the claimed investment tax credits for 1984 and 1985. Section 38 provides that a credit is allowed to a taxpayer for qualified investments in certain property. The credit is allowable for property with respect to which depreciation is allowable and which has a useful life of 3 or more years. Sec. 48(a)(1). Depreciation is allowable on property used in a trade or business or held for the production of income. Sec. 167(a). Our determination that petitioners did not engage in the activity of crabbing and fishing with the requisite profit objective is dispositive of this issue. Finoli v. Commissioner, 86 T.C. at 744; Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. without opinion 732 F.2d 164 (9th Cir. 1984). Accordingly, we hold for respondent on this issue. Issue 5. The Investment Tax Credit Recapture
The truck purchased in 1984 was paid for by cash and the trade-in of a 1981 Datsun truck which petitioners purchased in September 1983. Petitioners claimed an investment tax credit in the amount of $ 260 for the purchase of the 1981 Datsun on their 1983 return. This truck was reported as 3-year recovery property. *172 Respondent claims that petitioners must recapture the investment tax credit taken in 1983 because petitioners disposed of the truck before the end of the useful life of the property. Section 47(a)(1) requires a taxpayer to recapture a prior investment tax credit when "any property" upon which the credit was based is "disposed of or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38." Petitioners took an investment tax credit with respect to a truck purchased in 1983. In 1984, petitioners disposed of their truck. [8] This disposition occurred prior to the end of the claimed useful life of the truck. Consequently, the recapture provision of section 47(a)(1) applies.
Petitioners argue that they merely replaced the old truck with *173 a new one, and therefore section 47 should not apply. Section 1.47-3(h), Income Tax Regs., provides that if a taxpayer disposes of section 38 property and replaces it with property which is, for purposes of section 1033, similar or related in service or use to the property disposed of, the amount of recaptured investment tax credit shall be reduced (but not below zero) by the credit that would be allowable for the qualified investment in the replacement property. Sec. 1.47-3(h)(1)(i), Income Tax Regs. However, in order for section 1.47-3(h)(1)(i), Income Tax Regs., to apply, the replacement property must qualify as section 38 property. In the instant case, the replacement property does not qualify as section 38 property because it is not subject to depreciation as required by section 48. Therefore, the exception to the recapture provision of section 47 found in section 1.47-3(h)(1)(i), Income Tax Regs., does not apply. Accordingly, we hold for respondent on this issue. Issue 6. Unreported Income in 1984 from the Moon Tillet Fish Company, Inc.
On their 1984 Federal income tax return, petitioners reported that Mr. Nicholson earned $ 48.00 of income from the Moon Tillet *174 Fish Company, Inc. Petitioners did not attach a Form W-2 from the Moon Tillet Fish Company, Inc., to their 1984 return. The Form W-2 prepared by the Moon Tillet Fish Company, Inc., in Mr. Nicholson's name, reflects that he earned $ 247.50 in income during 1984. Respondent determined that Mr. Nicholson underreported income from the Moon Tillet Fish Company, Inc., in the amount of $ 199.00. Respondent's determination is presumed correct and petitioners bear the burden of proving otherwise. Rule 142(a). Petitioners failed to provide any evidence to explain the discrepancy between the Form W-2 from the Moon Tillet Fish Company, Inc., and the income reported on their 1984 Federal income tax return. Accordingly, we hold for the respondent on this issue. Issue 7. Medical and Dental Expense Deductions and Interest Expense Deductions
On Schedules A of their 1984, 1985, and 1986 Federal income tax returns, petitioners deducted medical and dental expenses in the amounts of $ 1,274, $ 420, and $ 682, respectively. Respondent determined that petitioners were only entitled to medical, and dental expense deductions in the amounts of $ 376.00, $ 0.00 and $ 125.00 for the years 1984, *175 1985, and 1986, respectively. On Schedules A attached to their 1984, 1985, and 1986 Federal income tax returns, petitioners also deducted interest expenses in the amounts of $ 6,918, $ 3,042, and $ 1,768, respectively. Respondent determined that petitioners were entitled to interest expense deductions in the amounts of $ 2,722, $ 1,136, and $ 2,605 for the taxable years 1984, 1985, and 1986, respectively. Respondent's determination is presumed correct. Rule 142(a). Petitioners argue that they demonstrated during their audit that they were entitled to the claimed itemized deductions. However, at trial, petitioners failed to present any evidence to indicate that respondent's determination with respect to the claimed medical and dental expenses and the claimed interest expense deductions is incorrect. Because petitioners failed to present any evidence which indicates that they are entitled to deductions in excess of those allowed by respondent, we find for respondent on these issues. Issue 8. Additions to Tax for Negligence or Intentional Disregard of the Rules and Regulations
For 1984 and 1985, section 6653(a)(1) imposes a 5-percent addition to tax if any part of any underpayment *176 of tax is due to negligence or intentional disregard of rules or regulations, and section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules or regulations. For 1986, section 6653(a)(1)(A) and (B) provides for additions to tax which are similar to those provided for in section 6653(a)(1) and (2). Respondent's determination is presumed correct. Bixby v. Commissioner, 58 T.C. 757 (1972); Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners failed to satisfy their burden of proof that their understatements were not due to negligence. On brief, petitioners argue that they employed an accountant in order to comply with the rules and regulations. The ultimate responsibility for a correct return lies with the taxpayer, who must furnish the necessary information to his return preparer. See SoRelle v. Commissioner, 22 T.C. 459, 489 (1954). *177 Petitioners bear the burden of proving that they at least supplied their return preparer with all the necessary information and that the incorrect return resulted from the preparer's mistakes. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioners failed to present any evidence to indicate that they supplied their return preparer with all the necessary information and that their understatements resulted from the preparer's mistake. Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency for 1986, respondent also determined that petitioners were liable for self-employment tax from their fishing and crabbing activity. This was an alternative position and respondent concedes that there is no self-employment tax liability if we determine that the fishing and crabbing activity was not engaged in for profit.↩
3. Petitioners seem to argue on brief that the divorce decree granted Mr. Nicholson and his ex-wife joint custody of their children and, therefore, neither parent had custody of the children for a greater portion of the year. However, for purposes of section 152(e), in the case of joint or split custody, custody is deemed to be with the parent who has physical custody of the child for the greater portion of the year. Sec. 1.152-4(b), Income Tax Regs.↩
4. Among the permissible relationships listed in section 152(a) are sons or daughters of the taxpayer. Sec. 152(a).↩
5. These figures are arrived at by dividing $ 1,575 (the amount of child support) paid by Mr. Nicholson during 1984 to his ex-wife for the support of Larry, Jr., and Kristie pursuant to the order of October 23, 1981, evenly between the two children and by adding to the amount allocated to Kristie, the $ 360 paid by Mr. Nicholson to his ex-wife pursuant to the order of October 23, 1984. See Kotlowski v. Commissioner, 10 T.C. 533, 536↩ (1948).
6. Section 280A(b) contains an exception to its general disallowance provisions for items which are deductible without regard to their connection with a trade or business or income-producing activity such as interest and taxes. Section 280A(c)(3) provides that subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or any portion thereof. The exception found in section 280A(c)(3), however, is limited by section 280A(c)(5). Under section 280A(c)(5), any deductions allowed under section 280A(c)(3) with respect to a dwelling unit which is also used by the taxpayer as a residence are limited to the excess of gross income attributable to the rental use over the deductions allocable to the rental use which are allowable for the taxable year whether or not the unit was so used. In his notice of deficiency, respondent made allowances for these exceptions to the general disallowance provision in section 280A(a).↩
7. The assets used by petitioners are not the type which one would expect to appreciate. Petitioners do not claim otherwise.↩
8. See Aderholt Specialty Co. v. Commissioner, T.C. Memo 1985-491↩ (holding that a sale constitutes a "disposition" for purposes of section 47).