T.C. Memo. 1998-129


UNITED STATES TAX COURT


STEVEN CARL AKERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6784-94.                    Filed April 6, 1998.


<u>Held</u>: P's resort activity constituted an activity
engaged in for profit; sec. 183(a), I.R.C., not
applicable.
<u>Held</u>, <u>further</u>: Sec. 6662(a), I.R.C., accuracy-
related penalties not applicable.


Steven Carl Akerson, pro se.

<u>Emile L. Herbert III</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, <u>Judge</u>: By notice of deficiency dated December 3,
1993, respondent determined deficiencies and penalties against
petitioner as follows:

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 1989 | $3,771 | $754 |
| 1990 | 32,683 | 6,537 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner's resort operations constituted an activity not engaged in for profit within the meaning of section 183 and (2) whether petitioner is subject to the section 6662(a) accuracy-related penalty for 1989 and 1990.

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts, with attached exhibits, is incorporated herein by this reference.

At the time of filing the petition, petitioner resided in Puntarenas, Costa Rica.

Background

Petitioner is a physicist who is dedicated to the use and promotion of solar energy.[1] In 1980 and 1981, petitioner chartered sailboats and installed solar equipment in Mexico and

---

[1] Petitioner holds United States patents on several inverter designs. Inverters change DC electricity to AC electricity. Solar energy panels produce DC electricity. Most homes use AC electricity.

Costa Rica.  In 1984, while living in Costa Rica, petitioner started a business, Heart Interface (Heart), to manufacture and sell electronic and solar powered equipment.  Shortly thereafter, Heart was incorporated in, and petitioner moved to, Washington State.

From 1984 through 1990, petitioner was president and part-owner of Heart.  In 1988, petitioner decided that he wished to end his involvement with Heart and move back to Costa Rica.  Thereafter, in 1988, petitioner signed a contract with Valley Forge Corp. to sell his interest in, and phase out his employment with, Heart.  The sale was completed in March 1990.  Heart continued to employ petitioner until sometime in 1991.  For the years 1988 through 1991, petitioner earned $105,632, $104,325, $96,269, and $20,453, respectively, as an employee of Heart.

Playa de los Vivos

Having determined that he would return to Costa Rica, petitioner considered how he would earn a living there.  In 1988, petitioner purchased an approximately 29-hectare improved tract of bayfront real property in Puntarenas, Costa Rica.  Located on the property was a hotel with five rooms, a kitchen, a restaurant, and a swimming pool.  In 1989, petitioner purchased approximately 10 additional, adjoining hectares.  Petitioner named the 39 hectares "Playa de los Vivos" and, since 1988, has operated a resort on the property (the resort or Playa de los Vivos).  Petitioner kept computers and electronic equipment in

one of the hotel rooms, which he used for the development of solar electronic equipment. Petitioner bought four sailboats, one in 1989, and three in 1990, to attract guests to the resort. Petitioner intended to attract customers to the resort who were interested in a healthy and naturalistic environment.

Bernadette Hendricks (Hendricks) has been petitioner's companion since before the years in issue, and, during the years in issue, Hendricks, her children, and petitioner's children regularly helped operate the resort. Petitioner hired Costa Rican attorney Federico Alvarado (Alvarado) and his law firm, Bufete, Robles, Lacle y Asociados, to provide legal services and to assist in the maintenance of Playa de los Vivos when petitioner was not present at the property.

Petitioner kept accurate books and records of the resort activity's income and expenses. Petitioner printed brochures to advertise the resort, and he offered the rooms for rent. From 1988 through 1995, most of the repair and maintenance expenses incurred at the resort were for parts and supplies, and not labor, because petitioner minimized costs by doing all of the repair work at the resort himself.

By 1997, the land value of Playa de los Vivos had appreciated substantially.

Petitioner's home in Costa Rica is located on a separate piece of property from Playa de los Vivos.

## External Factors Affecting Playa de los Vivos

The tourist industry in Costa Rica was adversely affected by international tension toward the end of 1990. In addition, although the Costa Rican Government promised to pave the roads surrounding Playa de los Vivos and begin a new ferry service, by as late as 1995, neither had been done, so it was hard for tourists to reach the property. Moreover, although the phone company promised telephone service in 1988, Playa de los Vivos did not have telephone service until 1996.

## Solar Equipment

In 1990, petitioner bought a solar powered ozone generator to purify the water in the resort's swimming pool without the use of chemicals, and a battery powered cart that he converted to solar power and used at the resort. An advertising brochure describing Playa de los Vivos and the amenities available there suggests that the resort was made possible through solar electronic technology and that petitioner's intent is to continue using such technology.

Petitioner's first sale of solar electronic equipment in Costa Rica subsequent to his purchase of Playa de los Vivos was in 1992.

## Petitioner's Tax Returns

Petitioner reported the results of the resort activity on Schedules C attached to his Federal income tax returns, Forms 1040, for his taxable (calendar) years 1988 through 1995. For

his taxable years 1988 through 1992, he described his principal business as "hotel resort"; for his taxable years 1993 through 1995, he described his principal business activity as "hotel resort, solar electronics manufacture & sale".  He reported gross income and expenses as follows:

| Year | Gross Income | Expenses | Net Gain/Loss |
|------|-------------|----------|---------------|
| 1988 | $0 | $14,642 | $(14,642) |
| 1989 | 0 | 34,049 | (34,049) |
| 1990 | 0 | 82,792 | (82,792) |
| 1991 | 339 | 70,703 | (70,364) |
| 1992 | 8,420 | 61,883 | (53,463) |
| 1993 | 15,368 | 94,508 | (79,140) |
| 1994 | 160,204 | 113,235 | 46,969 |
| 1995 | 109,799 | 99,569 | 10,230 |

For those years, petitioner's gross income is broken down further as follows:

| Year | Total Gross Income | Gross Income from Resort | Gross Income from Solar Sales |
|------|-------------------|-------------------------|-------------------------------|
| 1988 | $0 | $0 | $0 |
| 1989 | 0 | 0 | 0 |
| 1990 | 0 | 0 | 0 |
| 1991 | 339 | 339 | 0 |
| 1992 | 10,977 | 6,424 | 4,553 |
| 1993 | 16,021 | 11,891 | 4,130 |
| 1994 | 160,365 | 10,375 | 149,990 |
| 1995 | 164,487 | 6,211 | 158,276 |

OPINION

I.  Deficiencies

A.  Section 183--For-Profit Requirement

Section 183(a) provides:  "In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided

in this section."  Section 183(c) provides:  "For purposes of
this section, the term 'activity not engaged in for profit' means
any activity other than one with respect to which deductions are
allowable for the taxable year under section 162 or under
paragraph (1) or (2) of section 212."

The question we must decide is whether petitioner's activity
of operating Playa de los Vivos constituted an activity "not
engaged in for profit".

B.  Actual and Honest Profit Objective

An activity is engaged in for profit if the taxpayer has an
"actual and honest objective of making a profit."  Keanini v.
Commissioner, 94 T.C. 41, 46 (1990) (quoting Dreicer v.
Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion
702 F.2d 1205 (D.C. Cir. 1983)).  Although the expectation of
profit need not be reasonable, a bona fide profit objective must
exist.  Keanini v. Commissioner, supra at 46; Dreicer v.
Commissioner, supra; Golanty v. Commissioner, 72 T.C. 411,
425-426 (1979), affd. without published opinion 647 F.2d 170 (9th
Cir. 1981); sec. 1.183-2(a), Income Tax Regs.  Profit in this
context means economic profit, independent of tax savings.
Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893
F.2d 656 (4th Cir. 1990); Hulter v. Commissioner, 91 T.C. 371,
393 (1988).  Petitioner's objective is a question of fact to be
determined from all the facts and circumstances, keeping in mind
that petitioner bears the burden of proof.  Rule 142(a); Keanini

v. Commissioner, supra at 46; Golanty v. Commissioner, supra at 426; sec. 1.183-2(a), Income Tax Regs.

The regulations promulgated under section 183 provide a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. Sec. 1.183-2(b), Income Tax Regs. No single factor is determinative, Keanini v. Commissioner, supra at 47; Taube v. Commissioner, 88 T.C. 464, 479-480 (1987); sec. 1.183-2(b), Income Tax Regs. Taking those factors into account, and based on the record as a whole, we conclude that the resort activity was an activity entered into for profit.

C. Petitioner Had An Objective To Make a Profit

The regulations provide: "Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity * * * with the objective of making a profit." Sec. 1.183-2(a), Income Tax Regs. Respondent contends that petitioner did not have a profit objective with his resort activity and that he was engaged in the activity only to shelter income. We disagree.

When petitioner bought Playa de los Vivos, he was in the process of selling Heart, phasing out his employment at Heart, and trying to find a source of income to replace the salary Heart paid him. At the same time that petitioner bought the resort, he bought a home on a different piece of property than the resort. Additionally, petitioner kept accurate books and records of the

resort activity's income and expenses.  He printed brochures to advertise the resort, and he offered rooms for rent.  He expended energy and minimized costs by doing all of the repair work himself.  He hired Alvarado to provide legal services and to assist in the maintenance of the resort when petitioner was not present at the property.  Petitioner was experienced in operating sailboats, so he bought sailboats to attract guests to the resort.  Moreover, it was not unreasonable to expect that the value of Playa de los Vivos would increase, given the property's location and the promise of future infrastructure development.

While the losses may have been greater than what they would have been if petitioner had not tried to convert the resort activity to solar power, that does not mean he was not trying to operate it for profit.  Petitioner credibly testified that he had a profit motive when he bought Playa de los Vivos and that he continues to have one today.  Generally, a taxpayer's unimpeached, competent, and relevant testimony "may not be arbitrarily discredited and disregarded" by the Court.  Loesch & Green Const. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954).  Respondent did not refute petitioner's testimony, and we believe petitioner.

Based on all the facts and circumstances, we conclude that petitioner had a profit motive in operating his resort activity.

D.  <u>One Activity or Two</u>

Respondent contends that petitioner operated two activities, a resort activity with no profit motive and a solar equipment activity with a profit motive.  Because we find that petitioner engaged in the resort activity with a profit motive, it is not necessary for us to decide whether the solar equipment business was a separate activity.

E.  <u>Conclusion</u>

Petitioner's activity of operating Playa de los Vivos was an activity engaged in for profit within the meaning of section 183(c).  Accordingly, petitioner's expenses attributable to that activity are allowable as deductions.

II.  <u>Negligence</u>

Respondent determined that petitioner is liable for the accuracy-related penalty prescribed by section 6662 with respect to 1989 and 1990.  Because we have not sustained respondent's determination of tax deficiencies in petitioner's income tax for the years in issue, there is no basis for the imposition of the penalties determined by respondent.

In light of the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.