T.C. Summary Opinion 2002-147


UNITED STATES TAX COURT


LARRY MINNICK AND CHARLA MINNICK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8427-00S.              Filed November 18, 2002.


<u>Marshall H. Barkin</u>, for petitioners.

<u>Brandi B. Darwin</u>, for respondent.


DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

Respondent determined deficiencies in petitioners' Federal income taxes of $5,387 and $3,774 for the taxable years 1996 and 1997.

The issue for decision is whether petitioners' Amway activity in 1996 and 1997 was operated for profit such that petitioners may deduct expenses related to that activity in amounts greater than those allowed in the notice of deficiency.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Palatka, Florida, on the date the petition was filed in this case.

From 1992 through 1998, petitioner husband worked 45 hours per week as a maintenance supervisor for Georgia Pacific Corporation, while petitioner wife worked as a teaching assistant. Petitioners both have been involved with an Amway distributorship since 1989, operating it under the name Minnick Enterprises.[2] Amway, a supplier of various products for personal

---

[1]The adjustment in the notice of deficiency to the 1996 medical expense deduction is computational and will be resolved by the Court's holding on the issue in this case.

[2]Petitioner husband stated at trial that petitioners are now "Quixtar distributors" rather than Amway distributors. Although the exact nature of the relationship between Amway and Quixtar remains unclear, Quixtar apparently is a new computerized sales system which is related to Amway but which is used for both Amway and nonAmway products. Because petitioners appear to have been
(continued...)

use, uses a direct marketing approach to promote sales of its products.  It is based on an incentive system whereby a distributor's sales are rewarded by bonus checks.  In addition to earning commissions on their retail sales to consumers, distributors can increase their proceeds through the sale of products by individuals whom the distributor recruits.  The former are known as "upliners" or "sponsors", while the latter are known as "downliners".  Upliners sell Amway products to downliners at the same prices at which the upliners purchased them, and then earn bonuses based on the volume of the sales.  Thus, the wider the network of downliners a distributor creates, the greater is the distributor's profit potential.

Petitioners did not have written contracts with their sponsors or any of their downliners.  Prior to becoming distributors for Amway, petitioners did not review the financial records of any other Amway distributor regarding that distributor's success with Amway, nor did they have a written business plan detailing how they intended to profit from their distributorship.  Petitioners, however, did speak with existing Amway distributors concerning the nature of Amway operations.

Petitioners received reports from their upliner and from

---

[2](...continued)
primarily involved in the purchase and promotion of Amway products, we will continue to refer to their activity as an Amway distributorship.

Amway regarding their downliners.  These reports summarized order activity and bonus information.  Petitioners maintained a contemporaneous diary of meeting activities, but they did not maintain periodic financial statements for the distributorship. During 1996, petitioners constructed a building on their residential property, a "pole barn", which for a short period of time was used in part for storage of Amway products.  However, at some point during the years in issue, petitioners no longer needed to store products, and the building subsequently was used for entirely unrelated purposes.  On average, petitioners devoted approximately 2 nights per week, and approximately 2 weekends per month, to the Amway activity.  Petitioners' taxable wage and salary income was as follows for each respective year:

| 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|------|------|------|------|------|------|
| $61,137 | $65,980 | $64,018 | $65,500 | $67,000 | $72,403 |

Petitioners reported the following Amway-related gross income and net losses on their joint Federal income tax returns for taxable years 1992 through 1997:

|  | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|--|------|------|------|------|------|------|
| Gross income | $18,768 | $11,968 | $2,972 | $2,888 | $3,500 | $10,431 |
| Net loss | (9,559) | (25,724) | (18,056) | (18,392) | (19,395) | (12,349) |

In the notice of deficiency, which relates only to taxable years 1996 and 1997, respondent determined that the income petitioners received from their Amway activity was not earned in connection with an activity conducted for profit.  Thus, respondent determined that petitioners were required to report the Amway-

related income as "other income" on the front of petitioners' Forms 1040, U.S. Individual Income Tax Return, rather than as business income on the Schedules C, Profit or Loss From Business. Respondent accordingly disallowed the related Schedule C expenses which were in excess of the Amway income, and recharacterized the remaining related expenses as miscellaneous itemized deductions subject to the 2-percent floor under section 67(a).[3] Petitioners argue that the Amway activity was engaged in for profit and that the related expenses should therefore be allowed in full as deductions.

In order for expenses incurred in connection with an activity to be deductible, the expenses generally must have been ordinary and necessary either in carrying on a trade or business or in an activity engaged in to produce income. Secs. 162(a), 212; Elliott v. Commissioner, 90 T.C. 960, 969 (1988), affd. 899 F.2d 18 (9th Cir. 1990). In order for the expenses to be deductible in either situation, taxpayers must have conducted the activity with the intent to make a profit. Elliott v. Commissioner, supra at 970. Alternatively, taxpayers may claim a deduction under section 183(b)(2) to the extent of the income derived from the activity, if they otherwise meet the

---

[3]Respondent also determined that, if petitioners were found to have had a profit objective, a portion of the claimed Amway-related expenses was nevertheless not deductible under sec. 162. Based on our holding, we need not address this alternative position.

requirements of that section.

The test to determine whether a taxpayer conducted an activity for profit is whether he or she engaged in the activity with an actual and honest objective of earning a profit.  Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide, as determined from a consideration of all the facts and circumstances.  Keanini v. Commissioner, supra; Dreicer v. Commissioner, supra at 645; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).  More weight is given to objective facts than to the taxpayer's statement of his or her intent.  Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs.

The regulations under section 183 provide nine nonexclusive factors to be used in determining whether a taxpayer is conducting an activity with the intent to make a profit.  Sec. 1.183-2(b), Income Tax Regs.  The factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort

expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Id. No single factor controls, other factors may be considered, and the mere fact that the number of factors indicating the lack of a profit objective exceeds the number indicating the presence of a profit objective (or vice versa) is not conclusive. Id.

Application of the Factors

1. Manner in Which the Taxpayer Carries On the Activity

A profit objective may be indicated where the taxpayer operates the activity in a businesslike manner and keeps complete and accurate books and records. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioners' Amway activities were not conducted in a sufficiently businesslike manner. Petitioners did not maintain their own business records other than notes of meetings in a daily planner. Petitioners did not present evidence of any formal budgets, profit projections, or break-even analyses which had been prepared in connection with their distributorship. Although certain reports were provided to petitioners by Amway

and by their upliners, these were merely summary reports and show no independent effort by petitioners to track and/or improve upon the financial progress of the distributorship. Furthermore, petitioners did not make any substantial alterations in an attempt to improve the manner in which they conducted their operations, even after six or more years of losses. We find that this factor favors respondent.

2. <u>The Expertise of the Taxpayer or his Advisers</u>

A profit objective may be indicated where the taxpayer carries on an activity in accordance with practices learned from extensive study of accepted business and economic practices, or consultation with experts involved therein. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioners sought the advice of persons who might be considered experts in Amway-related activities. Petitioners attended various events conducted regularly which they believed would provide the expertise necessary to make their distributorship profitable. Although no evidence shows that petitioners sought the advice of experts outside the Amway organization, who might have had a more objective viewpoint regarding business plans and strategies, we find that this factor favors petitioners.

3. <u>Time and Effort Expended by the Taxpayer</u>

A profit objective may be indicated where the taxpayer uses much of his personal time and effort to carry on the activity.

Sec. 1.183-2(b)(3), Income Tax Regs. Petitioners devoted approximately two nights per week, and approximately two weekends per month, to the Amway activity. This time was spent in delivering products and in traveling to other individuals' homes for evening meetings as well as to monthly meetings and quarterly "major functions". In addition, petitioners concentrated on recruiting downliners, from whom income could be derived independently from the direct efforts of petitioners, rather than making direct sales. We find that this factor favors petitioners.

4. Expectation That Assets Used in the Activity Would Appreciate in Value

Despite a lack of profit from current operations, a profit objective may be indicated where a taxpayer intends to earn an overall profit with income earned from operations together with the appreciation in the value of assets used in the activity. Sec. 1.183-2(b)(4), Income Tax Regs. The pole barn constructed on petitioners' property was used temporarily in part for Amway-related purposes. However, this structure was used for Amway activities only temporarily, and there is no indication that petitioners intended to realize significant appreciation from it. We find that this factor remains neutral.

5. Taxpayer's Success in Other Activities

A profit objective may be indicated where the taxpayer has in the past taken similar activities and made them profitable

despite initial unprofitability. Sec. 1.183-2(b)(5), Income Tax Regs. No evidence was produced showing that either of petitioners had ever engaged in activities similar to Amway, or that either had ever been involved with making other activities profitable. We find that this factor favors respondent.

6. & 7. <u>Taxpayer's History of Income or Losses and the Amount of Occasional Profit, If Any</u>

A profit objective is strongly indicated where the taxpayer has experienced a series of profitable years. Sec. 1.183-2(b)(6), Income Tax Regs. A series of losses incurred during the startup stage of an activity does not necessarily indicate the lack of a profit objective, but it may so indicate if the losses continue beyond the customary startup period and are not otherwise explainable as due to customary business risks. <u>Id.</u> Petitioners sustained substantial losses in their distributorship activities for at least six consecutive years,[4] no profits were ever earned from the activity, and there is no indication that Amway distributorships which may eventually become profitable sustain such substantial and prolonged losses. Furthermore, petitioner husband's testimony indicates that the income earned from the distributorship was directly related to certain major expenses, implying a correlation between income levels and expense levels which would in effect always preclude the

---

[4]The profits and/or losses from the activity in the years 1989 through 1991 and after 1997 are not in the record.

realization of a profit.  We find that these factors favor respondent.

8. Financial Status of the Taxpayer

A profit objective may be indicated where the taxpayer does not have substantial income from sources other than the activity. Sec. 1.183-2(b)(8), Income Tax Regs.  Petitioners' separate wage and salary income provided a substantial source of income apart from the distributorship:  Petitioners' taxable income from their employment for 1996 and 1997 was in the amount of $67,000 and $72,403, respectively.  We find that this factor favors respondent.

9. Elements of Personal Pleasure or Recreation

A lack of profit objective may be indicated where there are personal motives for carrying on the activity, especially where the motive is personal pleasure or recreation.  Sec. 1.183-2(b)(9), Income Tax Regs.  Profit need not be the only objective, however, and personal motives may coexist with an actual and honest intent to derive a profit.  Id.

The significance of personal motives in this case is difficult to gauge.  On the one hand, petitioners expended a substantial amount of time in activities, such as driving long distances, which would appear to lack elements of pleasure or recreation.  On the other hand, much of petitioners' activities involved elements which were very personal in nature, such as

frequently visiting family members who were also involved in Amway. We find that this factor remains neutral.

As previously stated, more weight must be given to objective facts indicating a profit objective than to petitioners' statement of intent. <u>Dreicer v. Commissioner</u>, <u>supra</u>. After considering the objective factors detailed above, we find especially relevant the manner in which petitioners carried on the Amway activity and petitioners' history of losses and lack of profits. We find from these and the other objective facts in the record that petitioners did not have an actual and honest intent to profit from the Amway activity in 1996 and 1997.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.