LANNING E. LIKES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Likes v. Commissioner
Docket No. 8764-88
United States Tax Court
T.C. Memo 1991-286; 1991 Tax Ct. Memo LEXIS 327; 61 T.C.M. (CCH) 3012; T.C.M. (RIA) 91286; June 27, 1991, Filed *327 Decision will be entered for the respondent. Janice R. Tanquary, for the petitioner. Sara J. Barkley, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income taxes in the amounts of $ 2,139 and $ 3,394 for the taxable years 1982 and 1983, respectively. Respondent also determined that petitioner is liable for an addition to tax, in the amount of $ 535, for failure to timely file his 1982 Federal income tax return. The issues for decision are: (1) Whether petitioner's off-road racing activity was engaged in for profit; and (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) [1] for failure to timely file his 1982 Federal income tax return. FINDINGS OF FACT Some of the facts *328 have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioner resided in Denver, Colorado, at the time he filed his petition in this case. During the years 1981 through 1985, petitioner was employed as an investment adviser and actively engaged in investment banking and underwriting. During the taxable years 1982 and 1983, petitioner worked 40 to 50 hours a week as an independent financial adviser for First Financial Securities, Inc., in Denver, Colorado. During the years 1981 through 1984, petitioner also maintained an office for his investment business, Likes Investment Services, in Lamar, Colorado. Petitioner received compensation from his investment activities for the taxable years 1982 and 1983 as follows: Income From
Other Investment
Taxable Year
First Financial
Services Income 1982
$ 39,607.55
--
1983
68,955.09
$ 150.00
Petitioner holds a BS/BA degree in finance and economics from the University of Denver. He attended law school at the University of Denver College of Law from 1967 to 1970. Petitioner first became involved with auto *329 racing in his late teens. From his early twenties until approximately 1979, petitioner casually followed automobile racing, but he did not participate. Petitioner first became interested in off-road racing in 1979. Off-road racing involves racing motor vehicles over unpaved terrain. The courses are between 250 and 1,000 miles long. Petitioner was to off-road racing by a business associate, Bill Loughran, who owned a marketing and advertising firm. Mr. Loughran introduced petitioner to Richard Fliam, who was interested in automobile racing and had raced professionally for Chevrolet. Mr. Fliam was the president and principal owner of Mobil Wash (Mobil), an industrial painting company specializing in painting bridges, water towers, and construction equipment on a nationwide basis. Petitioner and Mr. Fliam decided that they wanted to engage in the Class 8 level of off-road racing. Class 8 desert racing involved large two-wheel drive utility pickup trucks. Petitioner and Mr. Fliam interviewed several professional mechanics to build a Class 8 off-road racing pickup truck. Petitioner ultimately entered into a contract with Walker Evans to build a truck. Mr. Evans has been involved *330 in off-road desert racing since 1969 and was a highly respected and successful participant in off-road racing. In 1981, petitioner purchased the vehicle which had been constructed by Mr. Evans for $ 57,000. Petitioner obtained a loan from United Bank of Skyline to purchase the vehicle. Mr. Fliam did not pay any of the purchase price and had no ownership rights in the vehicle. Petitioner and Mr. Fliam had no written agreement regarding their racing activities. It was their intention that Mr. Fliam would be the primary driver in off-road races, but petitioner was also to be a driver. Pursuant to their oral understanding, petitioner paid approximately one-half of the racing expenses incurred by himself and Mr. Fliam in their off-road racing activity. Mobil paid Mr. Fliam's share of the expenses. Petitioner had no written sponsorship agreement with Mobil, and did not report any income in the form of sponsorship payments from Mobil during the taxable years 1982 and 1983. During the years 1981 through 1984, two organizations, HDRA (High Desert Racing Association) and Score, sponsored nationally sanctioned off-road races. Each of these organizations sponsored four to five races *331 each year. During the years 1981 through 1985, petitioner entered the following off-road races. Year
Number of Races
Location of Races
1981
3
Parker, Arizona
Las Vegas, Nevada
Baja, California
1982
2
Parker, Arizona
Erie, Colorado (no
prize money available
for winners of this
race)
1983
1
Las Vegas, Nevada
1984
2
Parker, Arizona
Barstow, California
1985
0
--
Petitioner conducted his racing activity under the name Desert Competition. Petitioner maintained a savings account at United Bank of Skyline in the name of Desert Competition from approximately October 1981 until March 1982. After March 1982, petitioner did not maintain a separate bank account for his racing activities. There are essentially three sources of money from off-road racing activities: prize money, sponsors, and "contingencies." Prize money is very low in off-road racing, and it is virtually impossible to make money from racing activities without sponsors. Sponsorship money is paid by businesses to a racer in exchange for advertising on the off-road racing vehicle. Contingency money is similar to sponsorship money except payment also depends on how well the racer finishes. *332 Petitioner did not report any income from prize money, sponsors, or contingencies during the years in which he engaged in off-road racing. Mr. Fliam drove petitioner's truck in several races in which petitioner did not participate. Employees of two of Mobil's customers, Forke Brothers and Gilpatrick Construction, participated in some of these races with Mr. Fliam. Forke Brothers and Gilpatrick Construction paid some of the expenses, such as entry fees, for the races in which their employees participated with Mr. Fliam. [2]
On each of his income tax returns for the years 1981 through 1985, petitioner reported that he had no gross receipts from his racing activities. During these same years, petitioner claimed the following business expenses and depreciation deductions from his racing activities on his Federal income tax returns: Taxable Year
Expenses Claimed
Depreciation Claimed
1981
[3] $ 15,883.00
$ 14,250.00
1982
12,111.77
21,375.00
1983
9,138.00
21,375.00
1984
6,451.26
--   1985
5,712.68
--   *333 During each of the taxable years 1981 through 1985, petitioner claimed the following net losses on his Federal income tax returns from his racing activities: Schedule C Profit (Loss)
Taxable Year
From Off-Road Racing
1981
($ 30,133.00)
1982
( 33,487.00)
1983
( 30,513.00)
1984
(  6,451.26)
1985
(  5,712.68)
Petitioner was granted an extension for filing his 1982 Federal income tax return until October 15, 1983. Petitioner filed his 1982 Federal income tax return on August 31, 1984. OPINION The first issue for decision is whether petitioner's off-road racing activity was engaged in for profit. Section 183(a) provides that a taxpayer cannot claim a deduction for an activity which is "not engaged in for profit," except *334 as provided for under section 183(b). [4] An activity not engaged in for profit is any activity in which deductions would not be allowed for the taxable year under section 162, or under paragraphs (1) or (2) of section 212. Sec. 183(c). Section 162 allows a taxpayer to claim a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 212 generally allows a taxpayer to claim a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year "for the production or collection of income," and "for the management, conservation, or maintenance of property held for the production of income." *335 For a deduction to be allowable under either section 162 or 212, the taxpayer must show that the activity in which the expenses were incurred was engaged in with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, a taxpayer's profit objective must be bona fide. Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); Dreicer v. Commissioner, supra at 645. This is a factual issue which is to be resolved after considering all the relevant facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Finoli v. Commissioner, 86 T.C. 697, 722 (1986). In making this determination, greater weight is given to objective facts than a taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), *336 affd. 792 F.2d 1256 (4th Cir. 1986). Petitioner bears the burden of establishing the requisite profit objective. Beck v. Commissioner, 85 T.C. 557, 569-570 (1985); Rule 142(a). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors for determining whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 33-34 (1979). *337 We begin by examining the manner in which petitioner carried on his off-road racing activity. The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. We do not believe that petitioner operated his off-road racing activity in a businesslike manner. The lack of a formal written agreement between petitioner and Mr. Fliam indicates that petitioner did not conduct his off-road racing activity in a businesslike manner. [5] This is particularly true when the oral agreement does not adequately provide the terms for a business relationship. The testimony at trial indicates that petitioner and Mr. Fliam either never discussed or did not have the same understanding of several important aspects of the activity. Petitioner testified that *338 he and Mr. Fliam agreed to evenly split profits, including purse money, between themselves. Mr. Fliam testified that he understood that he was entitled to all purse money whenever he was the driver. We note that the parties stipulated that petitioner and Mr. Fliam agreed to evenly split profits from their racing activities. The stipulation does not, however, specify how profits were to be computed. Mr. Fliam testified that he and petitioner never discussed distribution of profits. Petitioner testified that he was responsible for one-half of the expenses incurred in the activity, and that Mr. Fliam or Mobil was responsible for the other one-half. Mr. Fliam testified that Mobil was responsible for the full amount of certain expenses. Petitioner testified that Mr. Fliam's primary contribution to the activity was his driving skills, but he and Mr. Fliam never specified the number of races in which Mr. Fliam was to race. With respect to races in which Mr. Fliam participated without petitioner's presence, petitioner testified that he was responsible for some of the expenses and was entitled to a portion of the proceeds, if any, from these races. Mr. Fliam, on the other hand, understood *339 that if he participated in a race without petitioner, he (Mr. Fliam) was responsible for all expenses and entitled to all proceeds from these races. Petitioner contends that Mobil sponsored his off-road racing activity, and that he agreed to display the Mobil's logo on the side of the truck in exchange for Mobil's agreement to pay one-half of the expenses. The lack of a formal relationship between petitioner and his purported sponsor [6] indicates that the activity was not conducted in a businesslike manner. There was no agreement with Mobil establishing the number of races in which petitioner's truck would compete. There was no agreement establishing the specific dollar amount that Mobil was required to pay. In addition, petitioner's testimony seemed to indicate that the computation of profits to be split between him and Mr. Fliam would be made by considering the expenses paid by Mobil as satisfying Mr. Fliam's obligation to pay one-half of the expenses as opposed to being considered as gross receipts of the joint venture between him and Mr. Fliam. *340 The failure to maintain a complete set of books and records also indicates that the activity was not conducted in a businesslike manner. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner claims that he maintained detailed notes of the expenses that he incurred in connection with the activity, that he and his accountants developed an accounting system, and that he used this accounting system in his racing activity. Copies of these purported detailed records that petitioner allegedly kept were not introduced into evidence. Petitioner did not establish that he kept books and records in a businesslike manner. Petitioner's testimony on his efforts to prepare for entering the off-road racing activity was unpersuasive and lacked specificity. Petitioner alluded to a business plan during his testimony. Petitioner and Mr. Fliam testified that the United Bank of Skyline required them to submit a business plan as part of petitioner's truck loan application. No written plan was introduced by petitioner and, as previously stated, the agreements which petitioner entered into with Mr. Fliam and/or Mobil are unclear. The lack of specific plans or specific goals support the conclusion that *341 petitioner's off-road racing activity was not engaged in with the requisite profit objective. See Burger v. Commissioner, 809 F.2d 355, 359 n.6 (7th Cir. 1987), affg. a Memorandum Opinion of this Court. The expertise of petitioner or his associates in operating a profitable off-road racing activity is another factor to be considered. Sec. 1.183-2(b)(2), Income Tax Regs. Both petitioner and Mr. Fliam were interested in other forms of automobile racing prior to becoming involved in off-road racing although neither had previously been involved in or operated an off-road racing activity. Petitioner testified that he consulted Mr. Evans on operating an off-road racing activity, but, on the record before us, we are unable to discern the extent of this consultation. Moreover, even if we found that Mr. Evans did give petitioner advice on how to operate his activity, petitioner has not shown that he followed this advice. Thus, we are unable to find that this factor weighs in petitioner's favor. The amount of time and effort expended by petitioner in carrying on the activity may indicate a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. During the years in *342 which petitioner engaged in the activity of off-road racing, eight to ten national races were run each year. Petitioner entered two races in 1982 and only one race in 1983. During the 5 years that petitioner was involved in off-road racing, petitioner entered a total of eight races. This is not indicative of a bona fide profit objective. Petitioner claims that he made serious efforts to develop after-market products [7] and secure sponsors. Petitioner never produced any after-market products and we find nothing to support a finding that serious efforts to develop these products were made. At trial, petitioner mentioned three "sponsors": Mobil, Gilpatrick Construction, and Forke Brothers. We conclude that Mobil did not in fact "sponsor" petitioner's activities; it simply met Mr. Fliam's obligation to pay a share of expenses. Petitioner's failure to report any income from Mobil supports this conclusion. The evidence regarding Gilpatrick Construction and Forke Brothers' sponsorships is vague and only establishes that Mr. Fliam allowed officers of these companies (who were Mobil's customers) to ride with him in some of the races and, in exchange, the officers paid relatively small *343 entry fees. Petitioner testified generally about other unsuccessful efforts to obtain sponsors. This testimony was vague, did not refer to any contemplated terms of sponsorship, and no documents were presented. The expectation that the assets used in the activity may appreciate in value may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner does not argue that he expected that assets used in his racing activity would appreciate in value. Moreover, Mr. Fliam testified that an off-road racing vehicle (the primary asset of petitioner's racing activity) has an expected life of only 3 to 5 years. The fact that the taxpayer has engaged in similar or dissimilar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the activity for profit even though the activity is presently *344 unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner argues that his prior involvement in the restaurant and underwriting businesses are similar to the off-road racing activity in that they are high-risk activities. Other than his own testimony, there is no evidence to support petitioner's contention that he successfully operated a restaurant. For purposes of this case, we weigh this factor as neutral. A history of losses with respect to the activity may indicate a lack of a profit objective. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioner reported no gross receipts from his racing activity during the 5 years in which he was so engaged. Based on the information provided on petitioner's returns, petitioner reported a total net loss of $ 106,296.94 during this time or an average loss of $ 21,259.39 per year. Disregarding depreciation, petitioner had a total negative cash flow of $ 49,246.71 during this time or an average annual negative cash flow of $ 9,849.34 per year. [8]
*345 Substantial income from other sources (particularly if losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved. Petitioner testified that his income in the late 1970s and early 1980s was "quite substantial" and in excess of $ 100,000 per year. Petitioner reported $ 110,499 of wage income on his 1981 Federal income tax return. Petitioner reported $ 39,608 and $ 68,955 of gross receipts on Schedule C of his 1982 and 1983 Federal income tax returns, respectively. He claimed deductions of $ 30,133, $ 33,487, and $ 30,513 in connection with his off-road racing activity for the taxable years 1981, 1982, and 1983, respectively. Thus, petitioner earned substantial income from other sources, and losses from his off-road racing activity generated substantial tax benefits for petitioner. Petitioner admits that he enjoyed off-road racing. Section 183 does not require that a taxpayer receive no pleasure from an activity in order to establish a profit objective. However, in the instant case, where other evidence suggests that petitioner did not enter into *346 the racing activity with the requisite profit objective, the fact petitioner enjoyed off-road racing further supports our finding that petitioner lacked the requisite profit objective. We find that petitioner failed to satisfy his burden of proving that he entered into the activity of off-road racing for profit. Accordingly, we hold for respondent on this issue. The second issue for decision is whether petitioner is liable for additions to tax for failure to timely file his Federal income tax return for the taxable year 1982. Petitioner's 1982 Federal income tax return was due on April 15, 1983. Sec. 6072(a). Respondent granted petitioner an extension for filing his 1982 return until October 15, 1983. Petitioner filed his 1982 return on August 31, 1984. Section 6651(a)(1) imposes an addition to tax upon a taxpayer who fails to file a timely return, unless it is shown that the taxpayer's failure to file is due to reasonable cause and not due to willful neglect. This is essentially a question of fact, and the burden of proof is on petitioner. Horton v. Commissioner, 86 T.C. 589, 597 (1986); Rule 142(a). Petitioner argues that because he was being audited *347 for his taxable year 1981 at the time that his 1982 return was due, and resolution of some of the issues raised in this audit could have potentially affected his 1982 return, his failure to file was due to reasonable cause. The fact that petitioner has a grievance with respondent over his tax liability for particular years is not a justifiable reason for failing to comply with the law requiring the filing of returns and declarations for entirely different years. He must adjust his differences with respondent in the manner prescribed by law in order to assure the orderly administration of the revenue laws.
Glowinski v. Commissioner, 25 T.C. 934, 936 (1956), affd. 100 U.S. App. D.C. 212, 243 F.2d 635 (D.C. Cir. 1957). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Entry fees represent only a minor portion of the cost of off-road racing. Maintenance and repairs constitute a much larger portion of the cost.↩
3. The parties stipulated that the amount of expenses, other than depreciation, claimed in 1981 was $ 15,833. A review of Schedule C of petitioner's 1981 return (Form 1040) indicates that the actual amount of expenses, other than depreciation, claimed by petitioner was $ 15,883.↩
4. Sec. 183(b) allows a taxpayer deductions which would be allowable if the activity was engaged in for profit to the extent of gross income derived from the activity. In the instant case, petitioner reported no gross income for his racing activity. Sec. 183(b) also allows deductions for an activity not engaged in for profit if the deductions would otherwise be allowable without regard to whether the activity was engaged in for profit. Neither party addressed the issue of whether petitioner would be entitled to deductions under this exception. In any event, such deductions would appear to have no impact on petitioner's liability for self-employment tax or the computational adjustment regarding medical deductions which gave rise to the deficiencies in this case.↩
5. See Morrow v. Commissioner, T.C. Memo 1988-372; Estate of Lanier v. Commissioner, T.C. Memo 1981-421↩.
6. By using the word "sponsor," we do not mean to suggest, nor do we find, that there was a bona fide sponsorship relationship. We note that petitioner's use of the term "sponsor" during his testimony was ambiguous and he described himself and his investment firm, Lanning Likes, Investments, as "sponsors" in addition to Mobil.↩
7. After-market products are products which are used on the race vehicle and are also sold to the public for use on their vehicles.↩
8. We note that petitioner reported a loss of $ 5,712.68 in 1985. None of this loss was attributable to a deduction for depreciation. Petitioner did not enter any races in 1985.↩