T.C. Memo. 1999-328

UNITED STATES TAX COURT

MARY ANN TOBIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12577-96.               Filed September 30, 1999.

<u>Robert Thomas Blackburn, Jr.</u>, <u>Chris Meinhart</u>, and <u>Scott R. Cox</u>, for petitioner.

<u>Rebecca Dance Harris</u>, <u>Edsel Ford Holman, Jr.</u>, and <u>Robert B. Nadler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax of $29,178 for 1990 and $35,937 for 1991.  Respondent also determined that petitioner is liable

for an accuracy-related penalty for negligence under section 6662(c) of $5,836 for 1990 and $7,187 for 1991.

During the years in issue, petitioner deducted certain costs related to establishing public display gardens on her farm. Respondent determined that the display gardens and the farm were separate activities, and that petitioner did not operate the display gardens with a profit objective. See sec. 183. After concessions, the issues for decision are:

1. Whether, for purposes of section 183, petitioner's display gardens undertaking[1] (known as Broadmoor Gardens) and farming undertaking are one activity, as petitioner contends, or two activities, as respondent contends. We hold that they are one activity. Respondent concedes that petitioner prevails on the section 183 issue if Broadmoor Gardens and petitioner's farm are one activity. Thus, we hold that petitioner operated Broadmoor Gardens for profit in 1990 and 1991.

2. Whether, as respondent contends, depreciation of the addition to petitioner's residence built in 1988 and 1989, which includes a conservatory used for Broadmoor Gardens, is subject to the restrictions of section 280A. We hold that it is.

---

[1] For purposes of sec. 183, two or more "undertakings" may be one "activity". Sec. 1.183-1(d)(1), Income Tax Regs. We refer to the display gardens and farm as "undertakings" because one of the issues in dispute is whether they were one activity.

3.    Whether petitioner is liable for the accuracy-related penalty for negligence under section 6662(c) for 1990 and 1991. We hold that she is not.[2]

## I.  FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### A.  Petitioner

Petitioner has lived in Irvington, Kentucky, since 1941 (including when she filed her petition), and on a farm since 1969.

Petitioner graduated from the University of Kentucky with a degree in accounting.  Petitioner was a Kentucky State representative from 1976 to the beginning of 1984.  She was Kentucky State auditor from 1984 to January 1988.  Petitioner ran for the Kentucky State Senate in 1992 but lost in the general election.  Petitioner is on the boards of directors of a family owned telephone company, a bank holding company, and two banks. Petitioner and her brother own a controlling interest in the Brandenburg Telephone and First State Bank in Brandenburg, Kentucky.

Petitioner's friend, Brucie Beard (Ms. Beard), also lives in petitioner's home.

---

[2] In light of our holding on the tax issues, petitioner's motion for relief is moot insofar as it requests that we shift the burden of proof, grant summary judgment, or suppress evidence.

B.   Petitioner's Farm

Petitioner owned about 3,300 acres of mostly contiguous Kentucky farmland (including about 1,900 acres of cropland) in 1990 and 1991.  Petitioner raises cattle and horses and grows corn, wheat, hay, and tobacco at her farm.  Petitioner developed part of her farm into a public display garden called Broadmoor Gardens, discussed below at paragraph I-D.  Petitioner grew no corn or tobacco on her farm during the years in issue because she leased the acres available for growing tobacco and participated in the corn set-aside program.

C.   Petitioner's Residence

Petitioner's residence was built in 1968 and 1969.

1.   The Addition

Petitioner added an addition to her residence in 1988 and 1989, at a cost of $623,027.  She added a conservatory (about 2,470 square feet or about 32' x 74'), a bedroom and office (hereafter called "petitioner's room") (875 square feet), an office closet (about 104 square feet), a second bedroom (hereafter called "Ms. Beard's room") (about 468 square feet), a bathroom containing a hot tub (about 625 square feet), a closet that adjoins both petitioner's and Ms. Beard's rooms (about 256 square feet), and an attached structure called a "pole barn" (about 1,680 square feet).  The addition is connected to the side of petitioner's house.

Petitioner used the pole barn to care for mares for the 2 weeks before they were ready to foal, to foal horses, and to store lawn mowers and farm equipment. She occasionally parked her cars in the pole barn. There is one door from the pole barn to petitioner's bedroom and one to the closet.

2. The Conservatory and Petitioner's Room

The conservatory contains many plants and has large glass windows across the front. The conservatory has one front door and one side door to the outside. Three rooms in the addition are connected to the conservatory by double glass doors: petitioner's room, the bathroom with the hot tub, and Ms. Beard's room. Next to the conservatory is a catering kitchen. The doors from the conservatory to petitioner's room were generally not locked during the day because people came to water plants or feed doves kept there when petitioner was not home, e.g., for a few months each winter when petitioner and Ms. Beard were in Florida.

Petitioner has a barn which is about 300 yards from her house. The front door of the conservatory is visible from the front of the barn. The back of the house is not visible from the front of the barn.

3. Petitioner's Records

Petitioner generally keeps her farm, financial, and other personal records in her room. Ms. Beard has a desk in petitioner's room. Some of petitioner's records are in boxes

around Ms. Beard's desk. Petitioner's room also contains petitioner's bed and a credenza with built-in filing cabinets. She sometimes works in bed, and she usually keeps books, a computer, and other papers at her bed.

Petitioner kept her bank statements for each year in a drawer with that year's tax documents, such as Forms W-2. At the end of the year, petitioner put her bank statements, canceled checks, receipts for paid bills for the farm, her Forms 1099, and any other tax-related records in a box labeled for that year beside the desk to give to her certified public accountant, Joseph Richardson (Richardson), to prepare her return. Richardson is a partner in the Louisville accounting firm of Richardson, Pennington & Skinner (RP&S). Petitioner also kept records for past years in boxes in her room. Petitioner filed spiral-bound copies of her tax returns, one per folder, in the credenza.

Ms. Beard kept some of her tax records in the credenza, and stored her bank statements, mortgage information, vehicle registration, and personal correspondence in petitioner's room. Petitioner and Ms. Beard occasionally handled each other's records.

D. <u>Broadmoor Gardens</u>

In the mid-1980's, the University of Kentucky and state agricultural officials began promoting alternatives to growing

tobacco. About that time, petitioner began looking for other sources of revenue to replace tobacco as her main cash crop. Petitioner's farm is located on U.S. Highway 60, which is the main road from Louisville to Owensboro, Kentucky. She wanted to find a way to use her farm to make money from people using U.S. Highway 60. She considered many alternatives, such as a vegetable stand, a recreational vehicle park, a flower cutting garden, a chuck wagon and show, and a petting zoo.

Ms. Beard was experienced in flower gardening and enjoyed arranging flowers and gardening. Petitioner, however, did not particularly like flowers or gardening.

Petitioner and Ms. Beard visited some public display gardens in Europe in spring 1985, and in the United States in the late 1980's. Petitioner believed that she could develop a profitable public display garden. She thought people would pay to see a public display garden like those she and Ms. Beard had seen in other States and abroad because her farm was in a good location and Kentucky had no other similar gardens. Petitioner also believed that, if she could attract people to the gardens, they would buy produce from the farm.

Petitioner had no income from Broadmoor Gardens in 1990 and 1991. Broadmoor Gardens opened to the public in 1993. Its features include: A display garden and conservatory, including two rose gardens, an all-white "moon" garden, a rock garden with

pool and fountain, an English garden, water gardens (indoor and outdoor), a Japanese garden with koi pool, a shade garden, several animal topiaries, a pond with black and white swans, an artificial stream through one of the gardens, a 2-mile trail for hayrides and hiking through wild flower meadows and woodlands, and domestic animals such as chickens, peacocks, ducks, other fowl, and pygmy goats. There was also a gift shop, which sold items such as birdhouses, handmade art objects from Kenya, and other knickknacks.

Petitioner and Ms. Beard, and occasionally their friend Michael Patterson (Patterson) and their employee Clinton Haynes conducted public tours of Broadmoor Gardens. Visitors were taken through the rooms in petitioner's residence that existed before she built the addition (including the family room, living room, dining room, and two kitchens), and also the conservatory, petitioner's room, the bathroom/hot tub, and Ms. Beard's room.

Many tropical plants were displayed in the conservatory. The conservatory also contained a patio garden and garden furniture for visitors. Petitioner used the conservatory primarily to display plants to show to the public. She also made it available to rent for weddings. Petitioner hosted the wedding of Ms. Beard's daughter in 1990, and, in 1992 (after the years in issue), two political events. Ms. Beard held a surprise birthday party for petitioner in 1991 in the conservatory. Petitioner and

Ms. Beard also had a political reception and a couple of parties and family gatherings at petitioner's home during which guests walked through the conservatory on dates not specified in the record.

Petitioner contracted with a nursery in Brandenburg, Kentucky, to grow seedlings for the conservatory until she built her own greenhouse sometime after Broadmoor Gardens opened in 1993.

Petitioner did not advertise Broadmoor Gardens in 1990 or 1991. She paid $1,530 in 1992, $37,923 in 1993, $11,235 in 1994, $3,597 in 1995, and $1,719 in 1996 to advertise Broadmoor Gardens.

Broadmoor Gardens opened on the first of April each year and closed when visitors stopped coming in mid-to-late fall.

Petitioner obtained a general business license for Broadmoor Gardens in 1993. She had no business license for the farm. She had commercial liability insurance for Broadmoor Gardens through Lloyd's of London because her farm insurance policy did not cover tourists who visited the gardens.

Petitioner managed both the farm and Broadmoor Gardens. Petitioner and Ms. Beard had an informal, unwritten joint venture agreement under which Ms. Beard would share part of any profits from Broadmoor Gardens in exchange for her efforts.

Petitioner worked on the farm and in the gardens. For example, she delivered colts, fed calves, cut bushes, mowed, removed the dead heads of flowers, planted flower bulbs, and cleaned the ponds.

Petitioner's employees generally worked both on the farm and in the gardens. However, each worker had responsibilities related mostly to either the gardens or the farm. Petitioner used some equipment and some of the facilities, such as the pole barn, for both the farm and the gardens. During the years in issue, petitioner had one bank account that she used for the farm, Broadmoor Gardens, and for her personal expenses.

E.   Petitioner's Federal Income Tax Returns and the Notice of Deficiency

Petitioner assembled all of her records relating to Broadmoor Gardens and her farm and gave them to Richardson to prepare her tax returns.

Petitioner calculated that $32,850 of the $623,027 cost of remodeling her home related to personal use. She estimated that this was the cost of Ms. Beard's room, the bathroom (but not the hot tub), and the closet. She began to depreciate $590,177 (i.e., $623,027 - $32,850) on her 1988 and 1989 returns under the heading "greenhouse". Petitioner deducted the following depreciation related to the "greenhouse" from 1988 to 1996:

| Year | Amount |
|------|--------|
| 1988 | $2,492 |
| 1989 | 48,998 |
| 1990 | 71,943 |
| 1991 | 62,038 |
| 1992 | 57,169 |
| 1993 | -0- |
| 1994 | -0- |
| 1995 | -0- |
| 1996 | -0- |

Petitioner reported on the Schedules F (Profit or Loss from Farming) she attached to her returns for 1990 to 1996 that her farm and Broadmoor Gardens were one activity. Petitioner incurred losses for the farm and Broadmoor Gardens in each of those years, whether the calculation is made for the farm and Broadmoor Gardens as one or two activities. On her Schedules F for 1990 to 1996, petitioner reported income and expenses from raising cattle, horses, and tobacco, agricultural payments, and income from a Colorado rental property. She reported depreciation of a greenhouse on a Schedule F for each year from 1990 to 1992. Petitioner reported the following amounts of gross receipts, interest expense deductions, losses, and depreciation on her Schedules F for 1983 to 1996:

| Year | Gross receipts | Interest | Losses (including depreciation) | Depreciation |
|---|---|---|---|---|
| 1983 | $10,593 | $9,535 | ($37,950) | $8,372 |
| 1984 | 3,875 | 12,574 | (32,786) | 4,090 |
| 1985 | 6,212 | 5,270 | (35,469) | 15,330 |
| 1986 | 16,791 | -0- | (189,357) | 27,986 |
| 1987 | 152,256 | 92,488 | (441,830) | 62,513 |
| 1988 | 124,778 | 165,686 | (597,344) | 112,479 |
| 1989 | 112,918 | 242,162 | (665,058) | 153,479 |
| 1990 | 156,342 | 278,819 | (618,068) | 163,002 |
| 1991 | 229,360 | 207,716 | (436,238) | 128,721 |
| 1992 | 163,245 | 167,674 | (394,552) | 126,696 |
| 1993 | 166,079 | 143,677 | (431,075) | 61,849 |
| 1994 | 114,463 | 153,340 | (418,001) | 41,582 |
| 1995 | 117,872 | 197,563 | (474,332) | 56,055 |
| 1996 | 107,276 | 224,345 | (595,778) | 79,213 |

Respondent mailed a notice of deficiency to petitioner on March 25, 1996.  Respondent determined that Broadmoor Gardens and petitioner's farm were separate activities and disallowed petitioner's deductions for depreciation and other business expenses related to Broadmoor Gardens.  Petitioner timely filed her petition on June 17, 1996.

## II. OPINION

A.   Whether Petitioner's Farm and Broadmoor Gardens Undertakings Were Separate Activities

We must decide whether petitioner's farm and Broadmoor Gardens were one or two activities in 1990 and 1991.  The applicable regulations state that, generally, the most important factors in deciding whether two or more undertakings are operated as one activity or separate activities are the degree of organizational and economic interrelationship of the

undertakings, the business purpose served by carrying on the undertakings separately or together, and the similarity of the undertakings. See sec. 1.183-1(d)(1), Income Tax Regs.[3] The Commissioner generally accepts a taxpayer's characterization of two or more undertakings as one activity unless it is artificial or unreasonable. See id.

Respondent argues that, under section 1.183-1(d), Income Tax Regs., Broadmoor Gardens and petitioner's farm were separate

---

[3] Sec. 1.183-1(d)(1), Income Tax Regs., provides in part:

(d) Activity defined--(1) Ascertainment of activity. In order to determine whether, and to what extent, section 183 and the regulations thereunder apply, the activity or activities of the taxpayer must be ascertained. For instance, where the taxpayer is engaged in several undertakings, each of these may be a separate activity, or several undertakings may constitute one activity. In ascertaining the activity or activities of the taxpayer, all the facts and circumstances of the case must be taken into account. Generally, the most significant facts and circumstances in making this determination are the degree of organizational and economic interrelationship of various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business or in an investment setting, and the similarity of various undertakings. Generally, the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities. The taxpayer's characterization will not be accepted, however, when it appears that his characterization is artificial and cannot be reasonably supported under the facts and circumstances of the case. If the taxpayer engages in two or more separate activities, deductions and income from each separate activity are not aggregated either in determining whether a particular activity is engaged in for profit or in applying section 183. * * *

activities. Respondent contends: (1) Broadmoor Gardens and the farm did not have a close organizational and economic interrelationship, (2) petitioner had no business purpose for operating Broadmoor Gardens and the farm as one activity, and (3) Broadmoor Gardens and the farm were not similar activities.

We have applied various factors in deciding whether a taxpayer's characterization of two or more undertakings as one activity is unreasonable for purposes of section 183, such as: (a) Whether the undertakings share a close organizational and economic relationship, (b) whether the undertakings are conducted at the same place, (c) whether the undertakings were part of a taxpayer's efforts to find sources of revenue from his or her land, (d) whether the undertakings were formed as separate businesses, (e) whether one undertaking benefited from the other, (f) whether the taxpayer used one undertaking to advertise the other, (g) the degree to which the undertakings shared management, (h) the degree to which one caretaker oversaw the assets of both undertakings, (i) whether the taxpayers used the same accountant for the undertakings, and (j) the degree to which the undertakings shared books and records. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Estate of Brockenbrough v. Commissioner, T.C. Memo. 1998-454; Hoyle v. Commissioner, T.C. Memo. 1994-592; De Mendoza v. Commissioner, T.C. Memo. 1994-314; Scheidt v. Commissioner, T.C. Memo. 1992-9.

Applying these factors, we conclude that the farm and Broadmoor Gardens undertakings were one activity. Petitioner's farm and Broadmoor Gardens had a close organizational and economic relationship. Both undertakings were conducted at petitioner's farm, and both were attempts to make the farm profitable. Petitioner used her farmland for both undertakings.

Petitioner created and developed Broadmoor Gardens in an attempt to replace tobacco as the farm's main cash crop. Both the gardens and the farm required the planting, tending, and harvesting of plants or crops. Petitioner managed both undertakings as one activity. The farm and Broadmoor Gardens shared the same employees and equipment. Richardson was the accountant for both undertakings. Petitioner used the same checking account and books for her farm and Broadmoor Gardens and reported both undertakings on one Schedule F in each of the years in issue.

Respondent points out that petitioner reported income from different undertakings, such as tobacco leases, corn subsidies, and horse and cattle sales, on her Schedules F, and that the common ownership of several undertakings does not mean they are a single activity. Respondent maintains that the only farming activity conducted on petitioner's farm was the raising and selling of cattle and horses, and that this activity was conducted away from petitioner's residence. We disagree that

petitioner's various undertakings are not part of a single farming activity. Raising crops and animals, leasing cropland, and participating in a Government agricultural subsidy program may be one activity if they are attempts by the farmer to generate income from the farm. See, e.g., Hoyle v. Commissioner, supra.

Respondent relies on Drummond v. Commissioner, T.C. Memo. 1997-71, affd. in part and revd. in part without published opinion 155 F.3d 558 (4th Cir. 1998), for the proposition that two farm undertakings that are not conducted on the same land are separate activities. Respondent's reliance on Drummond v. Commissioner, supra, is misplaced. In Drummond, we held that the taxpayer's horse and cattle undertakings were separate activities because we were not convinced that the taxpayer intended to use his herd of cattle to manage the pasture for his horses. In contrast, petitioner operated the gardens and farm as one activity.

Respondent contends that Broadmoor Gardens and petitioner's farm were separate activities because petitioner and Ms. Beard operated the gardens as a joint venture. Respondent also contends that the farm and Broadmoor Gardens did not depend on the success of the other. We disagree. Respondent cites no reason or authority to support the contentions that an undertaking may not be part of an activity just because it is

operated as a joint venture, or that two undertakings may not be one activity just because each does not depend on the success of the other.

Respondent contends that petitioner's farm and gardens are too dissimilar to be one activity, and that petitioner had no business purpose for operating the two undertakings together. Respondent characterizes Broadmoor Gardens as a tourist attraction and contends that a tourist attraction is clearly separate from a farm. We disagree. The taxpayers in Hoyle v. Commissioner, supra, and Sparre v. Commissioner, T.C. Memo. 1980-45, attempted to attract the public to their farms to participate in undertakings they devised in an attempt to supplement their income from traditional farming activities, including guided hunting, a gun club, and crabbing. In Hoyle v. Commissioner, supra, the taxpayer grew raspberries, soybeans, corn, and grain; guided hunting; boarded horses; raised horses and cattle; bred game birds; had a crabbing venture; raced thoroughbred horses; and participated in agricultural set-asides. According to Hoyle, those undertakings were one activity for purposes of section 183.

This case is like Hoyle v. Commissioner, supra, and Estate of Brockenbrough v. Commissioner, supra, in that petitioner was trying to find sources of revenue from her farm. It is also similar to cases where we held that horse breeding and other undertakings involving horses were one activity. See, e.g.,

Scheidt v. Commissioner, T.C. Memo. 1992-9 (horse farm and stallion syndication); Mary v. Commissioner, T.C. Memo. 1989-118 (horse farm and horse racing); Yancy v. Commissioner, T.C. Memo. 1984-431 (same). We conclude that petitioner operated her farm and Broadmoor Gardens as one activity for purposes of section 183.

Respondent concedes that petitioner prevails on the Broadmoor Gardens issue if we hold that petitioner operated the farm and Broadmoor Gardens as one activity. Thus, we hold that petitioner operated Broadmoor Gardens for profit in 1990 and 1991.

B. **Depreciation of the Addition**

1. **Applicability of Section 280A to the Addition**

Section 280A bars business deductions for a taxpayer's residence, unless an exception applies. Section 280A(c)(1)(A) allows a taxpayer to deduct home office expenses if the taxpayer uses the home office exclusively and regularly as the principal place of any trade or business. Petitioner points out that visitors to Broadmoor Gardens toured her entire residence and contends that section 280A does not apply to her residence because it was her principal place of business, and she used all of it for business purposes. We disagree. Section 280A applies to any dwelling unit that is used during the year as a residence, whether a taxpayer uses part or all of it for business. See sec.

280A(a). Petitioner lived in her residence in 1990 and 1991. Thus, the restrictions of section 280A apply to the addition, including the conservatory, because it was part of petitioner's residence.

Petitioner's reliance on Burkhart v. Commissioner, T.C. Memo. 1989-417, for the proposition that section 280A was intended to disallow expenses only where a taxpayer performs some, as opposed to all, of his or her business in the taxpayer's residence is misplaced. In Burkhart, the taxpayer operated a photographic studio in the basement of his residence. We held that section 280A applied to the studio because it was part of the taxpayer's residence. We did not consider whether section 280A does not apply if a taxpayer uses his or her entire residence for business.

2. Section 280A(c)(5) Limitation

A taxpayer's deductions for the business use of a residence are limited to the amount that the gross income from business use of the residence exceeds the amount of deductions allocable to such use which are allowable regardless of whether the residence was used for business (such as mortgage interest and property taxes) plus deductions for expenses of the business which are not allocable to the business use of the residence. See sec. 280A(c)(5).

Petitioner argues that the income against which we apply the section 280A(c)(5) limitation is the gross income from the Broadmoor Gardens and farm activity as a whole. We disagree. Section 280A(c)(5) specifically limits the taxpayer's deduction for business use of a residence to the amount of income derived from the business use of the residence. Petitioner contends that she earned $1,100 from tour tickets in 1990. However, she reported no ticket income on her 1990 return, and Broadmoor Gardens did not open until 1993. Thus, we conclude that petitioner had no income from business use of her residence in 1990 and 1991, and that she may not deduct depreciation related to her residence for 1990 and 1991. See sec. 280A(c)(5)(A).[4]

The result would not differ even if we considered all of the income from petitioner's farm and garden activity. That is because, under section 280A(c)(5)(B)(ii), we would consider only income in excess of expenses. Petitioner had large losses from her farm and garden activity in the years at issue.

---

[4] To the extent deductions are disallowed under sec. 280A(c)(5), they may be carried forward to the succeeding taxable year. See sec. 280A(c)(5), flush language. Sec. 168(e)(3)(D) provides a 10-year period for depreciation for single purpose horticultural structures as defined by sec. 168(i)(13)(B)(ii). Petitioner contends that the conservatory is a single purpose horticultural structure. Petitioner also contends that she used the conservatory exclusively for business. Based on our holding that petitioner may not depreciate any costs of the conservatory in 1990 and 1991, we need not decide whether petitioner used the conservatory exclusively for business in 1990 and 1991 or whether the conservatory was a single purpose horticultural structure under sec. 168(i)(13)(B)(ii).

C.   Accuracy-Related Penalty Under Section 6662

Respondent determined that petitioner was liable for the accuracy-related penalty for negligence under section 6662(a) and (c) for 1990 and 1991.  Respondent now concedes that petitioner is not liable for the negligence penalty for 1990 and 1991 except for any deficiencies related to petitioner's depreciation of the addition.

Section 6662(b)(1) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence. Negligence includes a failure to make a reasonable attempt to comply with the Internal Revenue Code or to exercise ordinary and reasonable care in that respect.  See sec. 6662(c).  Petitioner bears the burden of proving that she was not liable for the accuracy-related penalty imposed by section 6662(a).  See Rule 142(a).

Respondent contends that petitioner was negligent because the returns Richardson prepared included a deduction for depreciation of parts of her residence despite the income limits of section 280A and contained an allocation of 95 percent of the costs of the addition to business.

We disagree.  Good faith reliance on the advice of a competent, independent tax professional may offer relief from the imposition of the addition to tax for negligence.  See United States v. Boyle, 469 U.S. 241, 251 (1985); Leonhart v.

<u>Commissioner</u>, 414 F.2d 749, 750 (4th Cir. 1969), affg. T.C. Memo. 1968-98; <u>Otis v. Commissioner</u>, 73 T.C. 671, 675 (1980). Richardson was fully aware of the facts about petitioner's residence and Broadmoor Gardens.  Petitioner's reliance on Richardson to prepare accurately her 1990 and 1991 returns was reasonable.  Thus, we hold that petitioner is not liable for the accuracy-related penalty for 1990 and 1991.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.