T.C. Summary Opinion 2016-13

UNITED STATES TAX COURT

CHRISTOPHER H. KAISER AND LINDA L. KAISER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29769-13S.                    Filed March 21, 2016.

Christopher H. Kaiser and Linda L. Kaiser, pro sese.

Carlton W. King, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to be entered is not

reviewable by any other court, and this opinion shall not be treated as precedent

for any other case.  Unless otherwise indicated, subsequent section references are

to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency dated September 26, 2013, respondent determined deficiencies of $17,319 and $16,675 in petitioners' 2010 and 2011 Federal income tax, respectively, and accuracy-related penalties under section 6662(a) of $3,463 and $3,335 for 2010 and 2011, respectively. After concessions,[1] the issues for decision are: (1) whether Linda Kaiser's (petitioner's) horse training activity was engaged in for profit within the meaning of section 183; and (2) whether petitioners are liable for the accuracy-related penalties under section 6662(a) for the years in issue.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was timely filed, petitioners resided in New Hampshire.

---

[1]The parties agreed in the stipulation of facts to other adjustments determined in the notice of deficiency including that: (1) petitioners had unreported income of $1,226 for 2010 from State tax refunds; (2) petitioners are entitled to itemized deductions for medical expenses of $14,411 and $22,312 for 2010 and 2011, respectively; and (3) petitioners are entitled to deductions for business use of their home (the financial consulting and insurance business) for 2010 and 2011 in the amounts claimed on petitioners' Forms 1040, U.S. Individual Income Tax Return, for those years.

During the taxable years in issue petitioner operated a financial consulting and insurance business from her home. The business was identified as "Kaiser Consulting/Insurance Sales". Petitioner also conducted a horse training activity known as "The Forty Carrot Wisdom Co.".

Before the years in issue petitioner lived in Vail, Colorado. She managed a ski shop with approximately 45 employees from 1972 through 1982. Petitioner later moved to New Hampshire where she became involved in real estate and insurance activities. During the 1990s petitioner was a sales manager at a multinational financial services company.

In 2000 petitioner decided to start a personal financial planning and insurance business, but her goal was to retire and train Hanoverian horses. Petitioner was a competent dressage rider. Since 1998 petitioner has owned between one and four horses. In 2005 petitioner's first foal was able to begin training when it was four years old.

In 2005 petitioner was in a car accident and was unable to walk or ride horses for many months. Because of this accident, petitioner was unable to train her first foal. Nevertheless, at her foal's first show, the foal was named the top horse of the breed in New England.

In 2009 petitioner had almost completely recovered from her accident and began riding again. Petitioner purchased a couple of carriage horses to train. Petitioner believed that she could "make good money" selling the trained carriage horses.

In 2010 petitioner had a more serious car accident and was bedridden for some time. Petitioner often worked from her bed in 2010 and 2011. Petitioner required three surgical procedures because of the two accidents. Petitioner did not spend any time with respect to the horse training activity in 2010 and spent very little time in the activity in 2011. Petitioner sent the horses to a professional trainer in North Carolina during the winter months in 2010 and 2011.[2] In 2011 petitioner had four horses and gave some dressage lessons. Before 2010 petitioner had bred goats and horses. In 2010 petitioner decided that she could no longer afford to breed the goats or horses until her income increased.

Because petitioner could not work in her horse training activity after her second accident, in 2010 she began to create a Web site to educate children about animals. She posted approximately 15,000 photos of her horses, goats, chickens, and roosters to the site. Petitioner's sister-in-law wrote stories for the Web site.

---

[2]Petitioner initially testified that the horses were boarded in another location because she could not care for them on account of her injuries. She later explained that they were boarded only during the winter months for training.

Petitioner believed that the Web site would become operational in 2016. Petitioner estimated that the Web site will generate at least $100,000 in income in 2016.

Petitioner did not keep separate books and records for her horse training activity but rather kept track of her horse training expenses on a notepad. At some point petitioner had a separate checking account for her horse training activity; however, she closed the account before the years in issue because the bank required a minimum balance of $5,000 in the account and she wanted to avoid bank charges.

During the years in issue petitioner tried to sell her horses, but the market had collapsed in 2008 and no one wanted to buy them except to turn them into horse meat. Petitioner also tried to give her horses away a couple of times, but none of the people that she felt were competent to care for them had room in their barns. Petitioner felt that her horses were like her "children", and she would not give them to anyone that she felt would not properly care for them.

Petitioners' property, including a barn, suffered damage from flooding in 2007. Some repairs to the property were made during the years in issue. Petitioners attributed amounts incurred for the repairs to the horse training

activity. The damage from flooding and required repairs also hindered petitioner from conducting her horse training activity during the years in issue.

From 2008 through 2014 the gross receipts and expenses relating to the horse training activity, the horse and goat breeding activity, and the Web site activity were as follows:

| Year | Gross receipts | Expenses |
|------|---------------|----------|
| 2008 | --- | $18,456 |
| 2009 | --- | 17,531 |
| 2010 | --- | 36,276 |
| 2011 | $5,000 | 34,230 |
| 2012 | 7,922 | 28,296 |
| 2013 | 7,922 | 24,745 |
| 2014 | 5,000 | 22,493 |

As indicated, petitioner also conducted a financial planning and insurance business from her home. Petitioner employed one person in this activity.

Petitioners jointly filed Forms 1040 for the years 2010 and 2011. Petitioners reported gross receipts from the financial planning and insurance business of $134,746 and $164,964 respectively. For each of the tax years in issue petitioners reported on a separate Schedule C, Profit or Loss From Business, the losses from the horse training activity. Petitioners netted the profit from the

financial planning and insurance business against the losses claimed from the horse training business as "Business Income or (loss)" on the Forms 1040 for 2010 and 2011. Respondent disallowed deductions for the claimed losses from the horse training activity. Respondent does not question substantiation of the amounts claimed but asserts that deductions for the claimed losses should be disallowed because the horse training activity was not engaged in for profit within the meaning of section 183. Petitioners dispute respondent's determination.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have not asserted that the burden of proof should shift or presented any evidence that it should. We conclude that petitioners have the burden of proof in this matter.

The deductibility of a taxpayer's expenses attributable to an income-producing activity depends upon whether that activity was engaged in for profit. See secs. 162, 183, 212. Section 162 provides that a taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in

connection with the operation of the business. Section 212 provides for a deduction for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Section 183(a) and (b)(2)[3] specifically precludes deductions for activities not engaged in for profit except to the extent of the gross income derived from such activities. For example, deductions are not allowable for activities that a taxpayer carries on primarily as a sport, as a hobby, or for recreation. Sec. 1.183-2(a), Income Tax Regs. For a taxpayer's expenses in an activity to be deductible under section 162 or section 212 and not subject to the limitations of section 183, the taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Hastings v. Commissioner, T.C. Memo. 2002-310. Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer v. Commissioner, 78 T.C. at 645; sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an

[3]On these facts, the expense deductions would not be allowable without regard to whether petitioner's horse training activity is engaged in for profit under sec. 183(b)(1).

actual and honest profit objective is a question of fact to be resolved from all the relevant facts and circumstances. Hulter v. Commissioner, 91 T.C. at 393; Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. See Dreicer v. Commissioner, 78 T.C. at 645; sec. 1.183-2(a), Income Tax Regs. The taxpayer bears the burden of establishing the requisite profit objective. See Rule 142(a); Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Hastings v. Commissioner, T.C. Memo. 2002-310.[4]

Regulations promulgated under section 183 provide the following nonexclusive list of factors which normally should be considered in determining whether an activity was engaged in for profit: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount

---

[4]Petitioner is not entitled to a presumption that her horse training activity was engaged in for profit under sec. 183(d) for either year in issue because she has not presented evidence that gross income from her horse training activity exceeded deductions for any two years in the period of seven consecutive taxable years ending with either the first or second of the years in issue.

of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, that is determinative. Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.

This case does not warrant an exhaustive discussion of the factors listed in the regulations. There is little evidence in this record that petitioner operated the horse training activity in a businesslike manner. There is nothing in this record which reflects petitioner's business plan or how she intended to make a profit. While petitioner may have hoped to generate income from her horse training activity, there is no information as to how her receipts compare with her expenses. Petitioner had years of losses generated by the horse training activity and acknowledged that she had no gross income for 2010 and very little gross income for 2011. She spent little if any time in the horse training activity in the years in issue. In those same years petitioner operated her financial planning and insurance business and generated substantial gross receipts. Petitioner used the losses of the horse training activity to offset income from the financial planning and insurance

business. Petitioner had owned horses before engaging in the horse training activity and acknowledged that she considered her horses to be like her children. No doubt she experienced personal pleasure in owning her horses. Petitioner had a consistent history of little to no gross income in the horse training activity. While petitioner clearly has some level of business acumen in the operation of her financial planning and insurance business, she did not carry over these practices to the horse training activity.

We are satisfied from a careful review of this record that there is not sufficient evidence which would lead the Court to believe that petitioner engaged in the horse training activity with the actual and honest objective of making a profit. Respondent's determination in this regard is sustained.

Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" is an understatement of income tax that exceeds the greater of

10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent determined the accuracy-related penalty for each year was due to negligence or a substantial understatement of income tax. Respondent has satisfied his burden. The record reflects that petitioners failed to report income

from State tax refunds for 2010. Petitioner also failed to provide evidence that she operated the horse training activity with the intent to make a profit. In addition, the underpayments of tax are the result of substantial understatements of income tax for 2010 and 2011 because the understatements of $17,319 and $16,675, respectively, exceed $5,000, which is greater than 10% of the tax required to be shown on the returns.[5] Accordingly, because respondent has met his burden of production, petitioners must come forward with persuasive evidence that the accuracy-related penalties should not be imposed with respect to the underpayments because they acted with reasonable cause and in good faith. See sec. 6664(c)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners offered no evidence to show that there was reasonable cause for their failure to report the income tax refunds. Neither have they demonstrated that they acted with reasonable cause and in good faith with respect to reporting the horse training activity as an activity that was engaged in for profit. Therefore, the

---

[5]In the notice of deficiency respondent allowed itemized deductions for medical expenses of $11,218 and $15,092 for 2010 and 2011, respectively. Respondent's concession to allow itemized deductions for medical expenses of $14,411 and $22,312 for 2010 and 2011, respectively, would not reduce the understatement of income tax below $5,000 for either year. The amounts required to be shown on the returns for 2010 and 2011 were $27,168 and $25,871, respectively.

Court sustains respondent's determination of accuracy-related penalties under section 6662(a) for tax years 2010 and 2011.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.